38 U.S. 381
 13 Pet. 381
 10 L.Ed. 210
 ANN LUPTON, APPELLANT,
v.
PHINEAS JANNEY, EXECUTOR OF DAVID LUPTON, THE YOUNGER,
DECEASED, APPELLEE.
 January Term, 1839
 
 ON appeal from the Circuit Court of the United States, for the county of Alexandria, in the district of Columbia.
 A bill was filed on a subpoena which had issued from the Circuit Court on the fifth day of November, 1831, by Ann Lupton, the sole devisee and legatee of David Lupton the younger, for the purpose of surcharging and falsifying the accounts of the executor, Phineas Janney, which had been settled in three accounts rendered by him to and allowed by the Orphans Court of Alexandria. The first account was rendered and was settled on the 26th of October, 1816. The second account was settled on the 16th of April, 1818, and on the 5th of January, 1821, the executor rendered and settled his final account. The bill of the complainant was filed on the 4th day of June, 1833.
 The complainant alleged that the executor was chargeable with certain debts due to the estate of the testator, which he had failed to collect, and for goods of the estate sold by him, the amount of which sales had not been paid to him. Certain credits had been given in the accounts of the executor to parties not entitled to them; and, in an amended bill, facts are charged which amounted to a devastavit, which it was alleged were not satisfactorily contradicted by an amended answer. There was no imputation or charge of fraud in the executor; but it was asserted, that gross negligence was to be imputed to the executor, for which he was answerable de bonis propriis.
 The answers of the defendant denied all the allegations in the complainant's bill, material to charge him as executor of David Lupton the younger.
 The defendant also pleaded in his answer, an amended answer, as follows:
 'This respondent admits that the complainant was not present at, nor summoned to attend the said settlements. But he is advised and avers that the said settlements were legally made before a Court having full jurisdiction in the matter, in the due and regular exercise of its jurisdiction; and the respondent relies on the said settlements in bar of the jurisdiction of this Court, as a Court of original jurisdiction, in the case stated by the complainant, in the same manner as if the same were specially pleaded.'
 Also, 'This respondent is advised that an act of the General Assembly of the State of Virginia, passed the 8th day of March, 1826, entitled 'An act for the limitation of actions against persons acting in a fiduciary character, and their sureties, and other purposes,' is a complete bar to any proceedings against him, in that state, and was so when the said amended bill was filed.'
 In November, 1838, the Circuit Court made a decree dismissing the complainant's bill; from which decree this appeal was prosecuted.
 The case was argued by Mr. Semmes for the appellant; and by Mr. Jones, with whom was Coxe, for the appellee.
 Mr. Semmes argued the cause on all the matters contained in the bill; but the Court having decided the case on the limitation imposed by time on the complainant's right to recover, the argument on the point decided is alone given.
 Mr. Semmes for the appellant:
 In reference to the ground of defence assumed in the amended answer, that the lapse of time intervening between the settlement of the respondent's accounts and the institution of this suit is a bar to any decree for opening those accounts, it may be observed, that the general rule under which equity denies a stale demand is not indiscriminate or universal in its application: time is not alone sufficient. Every case is to be decided on its own basis, and it is in the sound discretion of the court, on weighing the circumstances, to say if they will grant or deny the relief. There is not and there cannot be in the mere lapse of time a peremptory bar, where no express statute of limitations governs the case. In discouraging stale demands for the peace of society, Courts of equity have established a necessary rule, but that necessary rule is still a plastic one, suitable to cases as Courts may judge it proper, the necessity of its application depending on many circumstances extrinsic and independent of the lapse of time. Thus equity will not close its doors in favour of a fraud, though time may have long passed since it was committed. Where an executor's or administrator's accounts have been settled in the proper court, ex parte; without notice to egatees or parties in distribution; the time within which a bill to surcharge and falsify will be entertained, is extended. Whether the original parties to the transactions sought to be opened, be alive or dead, is another material consideration; in the former case the remedial functions of the chancellor being more easy, and in the latter case, less easy of access.
 Notwithstanding, however, the pliability of the rule, and its adaptation to cases according to their exigency and inherent equity, the Courts have, in many cases where there were no rebutting circumstances of presumption, intimated, if not expressly fixed, a terminus to this lapse of time. Thus they will in general presume the payment of a bond, the extinguishment of a trust, and the surrender of a deed, after an acquiescence of twenty years by the parties in interest. A mortgage will be presumed discharged after the same lapse of time; and an adverse possession of twenty years will bar a bill in equity for the conveyance of the legal title. Yet even this rule, if rule it strictly be, is not inflexible. Courts frequently step beyond its limits, in cases where an obvious equity invokes its exception.
 Should this rule apply to the case at bar? The appellant shows that at the time these accounts were settled in the Orphans Court, she resided out of the jurisdiction of the Courts in the District of Columbia—that she was the sole legatee of her husband the testator—that the executor whom she now seeks to charge was a brother-in-law of the testator, and that she had unbounded confidence in him—that his executorial accounts were all settled ex parte, and without notice of any kind to her. She shows acts of gross omission to collect debts, and culpable negligence on the part of the executor, amounting to a devastavit. She shows that he has lost from ten to fifteen thousand dollars to her husband's estate by his neglect. Moreover, the original parties are all alive—the appellant, the legatee, and cestui que trust; and the appellee, the executor, and trustee. The lapse of time, from the settlement of the final account to the issue of the subpoena, is ten years and ten months—to the filing of the bill about twelve years. The lapse of time, from the devastavit charged to the filing of the bill, is about sixteen years.
 It is not necessary to cite authorities in regard to the defence against stale demands, nor to show the various modifications that doctrine has undergone in its application to different cases. One or two cases from Virginia may, however, be quoted, as ruling the present question. The Courts of that state allow an executor's accounts to be opened after a much greater lapse of time than twenty years, and even after the death of the original parties. In Burwell's Executors vs. Anderson's Administrator, &c., 3 Leigh, 348, the Court held lapse of time no bar, though thirty-one years had passed since the first testator's death. The executor of the distributee of the testator's widow was allowed to file his bill against the representatives of the executor of the first testator, surcharging and falsifying the accounts which had been settled, after a lapse of thirty-one years, and time was held no bar. The cases of Hudson et al. vs. Hudson's Executor, 3 Rand. 117, and Todd et ux. vs. Moore's Administrator, 1 Leigh, 457, though the relief prayed was denied under the peculiar circumstances, establish the general principle for which we contend.
 Mr. Jones, for the appellee, contended, that even if the matter of the bill came at all within the cognizance of the Circuit Court for original relief in equity, yet neither the bill itself, nor any thing disclosed in the progress of the cause, lays any sufficient foundation for the interference of equity in the matter; but, on the contrary, all the pretences for charging the executor by surcharging and falsifying the past settlement in the Orphans Court, are strictissimi juris, at best; and it is positively unconscientious and inequitable for the complainant to set up after her long acquiescence, with actual notice and knowledge of the circumstances that give colour to the principal objections now raised against the past settlement.
 2. That far less than the actual length of time during which she implicitly acquiesced in the settlement before she filed her bill, would, under the circumstances of the case, have presented a positive bar in equity to charges against the executor, so strictly penal in their grounds and their consequences, calling for forfeiture rather than restitution; and so entirely clear of all imputation of fraud, as those upon which alone she has founded her claims.
 The settlements in the Orphans Court, made by the executor, are prima facie evidence of their correctness. This is on the supposition that the parties interested in them had notice of the settlements. If they had not notice, or it was not supposed they had had notice, the accounts would not have been allowed to be filed.
 There was notice. The time of settlement of the accounts of an executor is fixed and limited. This is sufficient to show that every one who had an interest in the accounts had a knowledge of them, or might have known of their having been filed. At all times the accounts were open to the inspection of any one who might think proper to examine them.
 Sixteen and a half years from the settlement of the first account, and twelve and a half from the filing of the final account, had elapsed before the bill in this case was exhibited. While it is admitted that as to persons acting in a fiduciary character there is no limitation in cases of fraud, this principle does not apply when no fraud is charged; and none is charged or imputed in this case. It is contended, that after a reasonable time, the settlement in the Orphans Court, by the executor, is a bar.
 All the matters set up in the complainant's bill were proper for examination on exceptions to the accounts of the executor in the Orphans Court; and will the Court, after twelve years of silence, allow a party; passing by the Orphans Court, and neglecting to use the means of redress which that Court would have afforded for any misfeasance or omissions of the executor; to come into the Circuit Court by an original bill, and set up these matters? When a technical devastavit is charged against an executor, without an allegation of fraud, it is a tort, and there is a limitation. This is not claimed to be the rule in cases of fraud.
 The Court declined hearing Coxe for the appellee.
 Mr. Justice STORY delivered the opinion of the Court.
 
 
 1
 This is a case of an appeal from a decree of the Circuit Court of the county of Alexandria, dismissing a bill in equity brought by the appellant, Ann Lupton, the widow and devisee of the testator, David Lupton. The bill was first filed in June, 1833, although a subpoena was issued in November, 1831, and it seeks to open the accounts of the administration, upon the allegation of certain errors and omissions therein, as they were settled in three successive accounts of the executor, rendered ex parte, and allowed in the Orphans Court of Alexandria, in October, 1816, in April, 1818, and in January, 1821. The bill charges, among other things, that the estate was charged by the executor with the payment of a supposed debt of $4459 43, to one Peter Saunders, without any sufficient or legal evidence that it was in fact due. It also charges that the executor omitted to collect of John M'Pherson and Son a debt due to the estate of $4083 50, upon their note; and also specifies certain credits which have been omitted to be given by the executor; and contains a general allegation that other debts have been lost to the estate by the negligence of the executor. The prayer of the bill is in effect to open the accounts, with general liberty to surcharge and falsify. There is no charge in the bill that the executor has been guilty of any fraud; nor any reason given, nor facts stated, to excuse the long delay and laches in bringing the bill. The answer denies all equity, and insists upon the correctness of the accounts as settled, and contains a full explanation, in reply to the specific charges of the bill. It also relies on the settlement of the accounts in the Orphans Court, and the lapse of time, as a bar to the suit.
 
 
 2
 The opinion which we have formed upon this last point, renders it wholly unnecessary for us to consider several others which have been discussed at the bar; and especially the objection, that the Orphans Court has exclusive jurisdiction over the matters in controversy. We place this case wholly upon the ground of the lapse of time since the accounts were settled in the Orphans Court, a period, from twelve to sixteen years before the filing of the bill; the total omission of the bill to state any facts or circumstances to account for or excuse this long delay; and the absence of any suggestion of fraud in the settlements. Nothing is more clear than the general rule that ex parte settlements of accounts of this sort, in the Orphans Court, being matters within the acknowledged jurisdiction of the Court in the administration of estates, are prima facie evidence of their own verity and correctness; and the onus probandi is upon those who seek to impeach them. If they seek to impeach them, it should be by a suit brought recenti facto, within a reasonable time; and at farthest, within the period prescribed by the statute of limitations for actions at law upon matters of account; or else to assign some ground of exception or disability, within the analogy of the statute, to justify or excuse the delay. Otherwise it will be imputed to their own voluntary laches; and Courts of equity are never active in lending their aid to stale and neglected claims, for the known maxim of such Courts is, vigilantibus, non dormientibus leges subveniunt. We do not deem it necessary to refer to any authorities on this point, as it has been so long and so fully recognised in this Court; and upon this short ground, we are all of opinion that the decree of the Circuit Court dismissing the bill ought to be affirmed, with costs.
 
 
 3
 This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Columbia, holden in and for the county of Alexandria, and was argued by counsel. On consideration whereof, it is ordered and decreed by this Court, that the decree of the said Circuit Court in this cause be, and the same is hereby, affirmed, with costs.