# Richmond.

## SHARPE'S EX'OR AND ALS. v. ROCKWOOD AND ALS.

### November 15th, 1883.

1. PERSONAL REPRESENTATIVES—*Statute of limitations.*—Under Code of 1873, ch. 146, § 9, action on fiduciary's bond is barred only after ten years from accruing of cause of action ; that is, from return day of execution against fiduciary, or from time of right to require payment or delivery from fiduciary.  *Leake's Ex'or* v. *Leake*, 75 Va. 801.

2. IDEM—*Idem—Cases compared and distinguished.*—There is no conflict between *Lupton* v. *Janney*, 13 Peters, 381, and *Leake's Ex'or* v. *Leake*, *supra.*

3. PRACTICE IN CHANCERY—*Continuation of suit—Statute of limitations.*—Where suit is brought and decided in 1858, but retained on docket till 1867, because there was no hand to receive the fund, when it is dismissed with leave to reinstate it on motion of any person interested, and it is reinstated in 1878, and a supplementary suit is brought, the latter is deemed a continuation of the former, *quoad* questions arising under the statute of limitations.

4. FIDUCIARIES—*Investments in Confederate bonds—Case at bar.*—In 1856, G qualified as executor of S, and received assets sufficient to pay all debts and legacies of testator, in gold or its equivalent; G paid out all but $12,000, which, under order of circuit court of Richmond entered July 10th, 1863, on his *ex parte* application, he invested in Confederate bonds.

HÉLD :

    Such investment did not discharge G from his liability to account to the unpaid legatees in good money for the principal and interest of the said sum so received by him in gold or its equivalent. *Crickard* v. *Crickard*, 25 Gratt. 410 ; *Leake's Ex'or* v. *Leake*, *supra.*

5. IDEM—*Sureties—Liability—Order and bond.*—Where testator desired security only for protection of particular legacy by bond with penalty prescribed in will, but the order of court and the bond is in the usual form without noticing testator's desire, the bond will protect and the sureties are liable to the extent of the penalty for any failure of executor faithfully to discharge the duties of his office.

6. IDEM—*Decree against account—Admission of assets.*—Where answer of executor admits assets sufficient to satisfy decree, it is not error to decree against him without a previous account of assets.

7. PRACTICE IN CHANCERY—*Legatees—Parties.*—Where there are assets sufficient to pay all, one entitled to a legacy of an amount certain, may maintain suit therefor, without making the other legatees parties. Otherwise, in case of residuary legatees, unless it appears that all prior legacies have been satisfied.

8. FIDUCIARIES—*Funds in hand—Interest.*—Interest is required to be paid by fiduciaries on funds kept and used by them. And if such funds are kept they are presumed to have been used, and to have been worth or to have made interest. *Templeman* v. *Fauntleroy*, 3 Rand. 434.

Appeal of Wellington Goddin, executor of H. W. Sharpe, and L. B. Price, and Jesse F. Keesee, sureties of said executor, from decree of chancery court of Richmond city, rendered 28th October, 1880, in suit therein pending, under the style of *Rockwood* v. *Sharpe's Executor and others.*

Opinion states the case.

*Sands, Leake & Carter,* for the appellants.

(1). The true period of limitation, so far as the sureties are concerned, is *five* years—not *ten*. Bart. L. P. 73; *Leake* v. *Leake*, 75 Va. 801, 802, overruling *Lupton* v. *Janney*, 13 Pet. 381, is not admitted to be law. See the statute, Code, ch. 146, § 14.

(2). The case of the executor, as to the investment in Confederate bonds, is to be distinguished from *Crickard* v. *Crickard*, and cases of that kind. It rather falls under the rules laid down in *Pidgeon* v. *Williams*, 21 Gratt. 251; *Zetelle* v. *Myers*, 19 Gratt. 62; *Mills* v. *Lancaster*, 28 Gratt. 442.

(3). There should have been no decree without first requiring the settlement of the executorial accounts. 3 Lom. Ex. 769; 5 Gratt. 384.

(4). The sureties are not liable to the plaintiffs. They

became sureties only for the protection of the legacy to Laura Ann. 1 Lom. Ex. 245–250.

(5). No decree should have been pronounced without making Laura Ann, and the legatees alleged to be posterior to the plaintiffs, parties. 1 Bart. Ch. Pr. 154, 156; 9 Gratt. 273, 275.

(6). Interest should not be allowed on the legacies, the legatees being without a guardian in Virginia to receive it, and the executor making no interest. 2 Rob. Pr. (old), 107; *Cavendish* v. *Fleming*, 3 Munf. 198; *Johnson* v. *Mitchell*, 1 Rand. 209.

(7). Interest should be disallowed during the war—the executor in Virginia and the legatees in Missouri.

(8). Whether the ten years' limitation or the five years' be adopted, the claim of Lucy H. Rockwood is barred. She arrived at age on the 3d April, 1859, two years before the stay-law began to run. This suit was brought 9 years and 363 days after the stay-law expired. Add the nearly ten years posterior to the stay-law, to the two years before it, and there are nearly twelve years—*i. e.*, 11 years 363 days.

*F. W. Christian* and *C. C. McRae*, for the appellees.

RICHARDSON, J., delivered the opinion of the court.

The question in this case is as to the liability of the sureties of Wellington Goddin, executor of Henry W. Sharpe, deceased.

The testator departed this life in the year 1856, leaving a will, which was duly admitted to probate on the 12th day of August, 1856, by which Wellington Goddin was appointed executor, and as such qualified on the 14th day of August, 1856, and entered into bond in the penalty of $20,000, with J. L. Apperson, L. B. Price and Jesse F. Keesee as his sure-

ties; and the bond thus entered into was with condition, in the usual form, that "the said Wellington Goddin should faithfully discharge the duties of his office of executor."

The controversy in this case arises out of the seventh clause of the testator's will, by which he gave "to Martha Rockwood, wife of James Rockwood, and daughter of Thomas Bridgewater, deceased, $2,000, to her and her heirs forever." Martha Rockwood died prior to the time at which said testator departed this life, leaving surviving her six children, to-wit: John Thomas, Ann Eliza, Martha Jane, Lucy Hubbard, Charles Custis and Sarah Margaret, to whom said bequest passed at the death of said testator, under and by virtue of § 13, ch. 118, Code of 1873.

In the year 1858 John Thomas Rockwood, one of the children of said Martha Rockwood, brought a suit in equity in the circuit court of the city of Richmond against said Wellington Goddin, executor of said Sharpe, James Rockwood, his father, and his said brothers and sisters, of whom he alleged in his bill that Lucy H., Sarah Margaret and Charles Custis, were then infants, and the other two adults.

In his bill the said John Thomas Rockwood alleges that he is informed by the said executor "that the estate of his testator is fully able to satisfy and pay all the legacies under the said will, and that he was only prevented from paying same promptly by reason of the question which had arisen as to whom he should pay the bequest to said Martha Rockwood." The said executor answered said bill, and admitted said allegation of sufficiency of assets for the purpose, and willingness to pay the said legacy when it should be known to whom it was rightfully going; and the said circuit court, by a decree entered in said cause, on the 15th day of December, 1858, declared that the six children aforesaid of Martha Rockwood were entitled to the said legacy of $2,000, and decreed that the said Goddin, executor as aforesaid, should, out of the estate of the said testator,

in his hands to be administered, pay to each of the adults aforesaid, one-sixth part of said $2,000, with interest from the 23d day of July, 1857.

At the time of the rendition of this decree, it appears that the appellees, who were infants, were not represented by any *guardian*, and hence as to the shares of these infants no decree directing payment was made, there being no authorized hand to receive payment; but the cause was retained for such future action as might be necessary. And it appears that the cause remained on the docket until 1867, when it was stricken therefrom, with leave to any person interested to reinstate the same for good cause shown. It was so reinstated after the bringing of this suit, and ordered to be heard together therewith. This suit was brought and prosecuted as supplementary to the previous pending suit of John Thomas Rockwood v. said Goddin, executor, &c., and als., and was so treated in its decree by the court below.

By the third clause of his will the testator, Henry W. Sharpe, manumitted his slaves (naming them) and their increase. By the fourth clause thereof he bequeathed to Laura Ann, one of said manumitted slaves, $10,000. By the thirteenth and last clause said testator named Wellington Goddin as his executor, who, at his death, was to be succeeded by Augustus Bodeker, named as such successor; and in the same clause said testator expresses the desire that on the qualification of said Goddin as executor, or of the said Bodeker after him, security be required only for the protection of the legacy to said Laura Ann, and that the bond be in the penalty of $20,000.

The entire estate of said testator passed into the hands of Wellington Goddin, executor as aforesaid, in good money, long prior to the war. In fact, the bulk of it was received by him, in gold or its equivalent, prior to the year 1859; very little after that year, as appears from the settled ac-

counts of said executor. It clearly appears, not only from the admissions of said executor, before referred to, but from his inventory and accounts, that he received assets more than sufficient to pay all the bequests of the testator, including that of the $2,000 to Martha Rockwood, here in controversy.

The executor, Goddin, kept the money thus received by him, in gold or its equivalent, before the war, or so much of it as he had not paid out to other legatees, until July the 10th, 1863. He then made an *ex parte* application in vacation, to the judge of the circuit court of the city of Richmond, for leave to invest the sum of $12,000, that being about the amount of the balance in good money in his hands; and said court, by an order made on the same day, accordingly granted him leave to invest the said sum in Confederate bonds, which he did.

Subsequently, upon the application by the appellees to said executor for payment of the amounts due them, and refusal by said executor to pay the same, they, on the 30th day of December, 1878, instituted this suit against said executor and his sureties, to recover their shares respectively of said $2,000 bequeathed to said Martha Rockwood.

The cause came on to hearing in the chancery court of the city of Richmond, on the 28th day of October, 1880, when a decree was rendered in favor of the complainants, the appellees here, against said executor and his sureties, for their respective shares of said legacy, and from that decree this appeal was allowed.

The several assignments of error will now be noticed in their order.

I. It is contended that the true period of limitation, so far as the sureties of the executor are concerned, is five years—not ten. A mere reference to the 9th section of chapter 146 of our Code would seem to be all-sufficient to overturn this position. This section of our statute has

received the emphatic interpretation of this court. In *Leake's Ex'or* v. *Leake*, 75 Va. 801, it is held that the statute just referred to prescribes a plain test for determining when the cause of action is deemed to have accrued in suits upon fiduciary bonds, and that there is no statutory bar until ten years after the right of action has accrued; which period begins, by express provision of the statute, to run from the return day of an execution against a personal representative, or from the time of the right to require payment or delivery, by such representative, upon an order made by a court acting upon his account. When there has been no execution or order (and none is pretended in this case), there is no bar other than that arising from staleness of demand as recognized by courts of equity.

It is insisted, however, by counsel for the appellants, that *Leake* v. *Leake* does not correctly propound the law on this subject; and that it is opposed to the decision of the supreme court of the United States, in *Lupton* v. *Janney*, 13 Pet. 381. This is an unfounded assumption. There is nothing in the latter case in conflict with the former; though the plain inference is, from certain remarks of Staples, J., in delivering the opinion in the first named case, that he thought there was a conflict. *Lupton* v. *Janney* was a case in which the widow and devisee of the testator, David Lupton, filed a bill, the object of which was to open accounts in a general way, rendered by the executor *ex parte*, and allowed in the orphans' court of Alexandria, in October, 1816, in April, 1818, and in January, 1821; and the prayer of the bill was in effect to open the accounts, with general liberty to surcharge and falsify. The bill did not charge that the executor had been guilty of any fraud; nor was any reason given, nor facts stated, to excuse the long delay and *laches* in bringing the suit. The answer denied all equity, and insisted upon the correctness of the accounts as settled, and contained a full explanation in

reply to the specific charges of the bill; and relied upon the settlement of the accounts in the orphans' court, and the lapse of time, as a bar to the suit. Such, substantially, was the case, as stated by the distinguished judge who decided the same. Judge Story, in delivering the opinion, says: "We place this case wholly upon the ground of the lapse of time since the accounts were settled in the orphans' court, a period from twelve to sixteen years before the filing of the bill; the total omission of the bill to state any facts or circumstances to account for or excuse this long delay; and the absence of any suggestion of fraud in the settlements."

The cases rest upon wholly different grounds, and are governed by entirely different principles. It is true that in both, settled accounts were relied on, but under strikingly different circumstances. In *Leake's Ex'or* v. *Leake*, as in the case now under consideration, this same executor, Wellington Goddin, relied upon the statutory bar to prevent the opening of his *ex parte* settlements, in which he was credited with a large sum invested in Confederate States bonds, when the money was received by him as executor before the war in gold or its equivalent. In *Lupton* v. *Janney* there was no question even remotely akin to such unauthorized investment; on the contrary, the case, as expressly declared, went off, in effect, upon the ground of lapse of time, or staleness of demand, independent of any question of statutory bar. Further on in his opinion, Judge Story, it is true, in speaking of such settled accounts, says: "And the *onus probandi* is upon those who seek to impeach them. If they seek to impeach them, it should be by a suit brought *recenti facto*, within a reasonable time; and at farthest, within the period prescribed by the statute of limitations for actions at law upon matters of account; or else to assign some ground of exception or disability within the analogy of the statute to justify or excuse the delay.

Otherwise it will be imputed to their own voluntary *laches*; and courts of equity are never active in lending their aid to stale and neglected claims." It is, therefore, apparent that there is no necessary conflict between *Lupton* v. *Janney* and *Leake's Ex'or* v. *Leake*; nor is there anything in the former case to sustain the contention of the appellants in this case as to the question of limitation. But, however all this may be, there is still another ground upon which the demands of the appellees are effectually protected against the statutory bar attempted to be set up against them. The first named suit of John Thomas Rockwood enured to the benefit of the three infants, the appellees here, as well as to the three adults. That suit was removed from the docket with leave to reinstate, and it was reinstated, and this cause created and decided as supplementary thereto; and when so reinstated it was, to all intents and purposes, as much a pending cause as if it had never been removed; and this obviates all difficulty as to the question of the statute of limitations, there having been a continuously pending suit, to which the appellees were parties, since 1858. So it is apparent that the claims of the appellees are not barred, and there is no error in the decree of the court below in this respect.

II. The second assignment of error is that the executor was protected by the order of the circuit court of the city of Richmond, made on the 10th day of July, 1863, authorizing him to invest the fund in Confederate bonds, and that therefore the court below ought to have discharged him from liability. This position, too, is wholly untenable, as is settled by this court in the very similar case of *Crickard* v. *Crickard*, 25 Gratt. 410.

III. It is contended for the appellants that under the peculiar provisions of the testator's will, the securities in the executorial bond are not liable to the appellees.

It is true the testator in his will expressed the desire

that security be required only for the protection of the legacy to Laura Ann, and that the bond ·be in the penalty ·of twenty thousand dollars; but in the order of probate no notice was taken of this request; and we must presume that the court of probate, for satisfactory reasons, disregarded it, as it had the right to do under the law.   Hence the bond was in the usual form, and with condition for the faithful discharge of the duties of the office of executor. Those dutie$ were not faithfully performed, and as a consequence, the executor ·being insolvent, his sureties are liable and must be held to comply with their undertaking.

IV. It is insisted that an account should have been ordered before a decree was rendered against the executor and his sureties.   This position cannot be sustained in the peculiar circumstances of this case.   It clearly appears that the executor was not only properly chargeable with, but admitted assets more than sufficient to pay all the legatees, including the claims of the appellees.   In such cases no account is necessary.   This is well settled.   *Mc-Rae's Ex'ors* v. *Brooks*, 6 Munf. 157, and numerous cases which need not be cited.   It would have been error to decree in the absence of either an account or *an admission* showing assets sufficient to satisfy the decree.   *Wills' Adm'r* v. *Dunn's Adm'r*, 5 Gratt. 384; 2 Lomax Ex. 769. But in this case we have the admission of assets.   Besides, the decree of the court below is founded on the accounts of the executor as settled by himself, surcharged and falsified in respect to the investment in Confederate bonds, with which the executor had been improperly credited, and this shows a fund fully sufficient in the hands of the executor, and dispenses with any necessity for an account.

V. It is contended that the other legatees should have been made parties.   This is not the case.   Of all the legatees, the appellees alone remain unpaid.   One entitled to a legacy of an amount certain, may maintain a suit there-

for without making the other legatees parties. Sands' Suit in Equity, 198, and cases cited. This is especially true where, as in this case, the assets are sufficient to pay all. In the case of residuary legatees, who must have satisfaction out of what is left after paying the prior legacies, the prior legatees must be made parties; but even this is not necessary if it appears that such prior legacies have been discharged. 1 Barton's Ch'y Pr. 154; *Nelson's Ex'or* v. *Page,* 7 Gratt. 160.

VI. It is contended that interest should not have been allowed on the legacies, the legatees being without a guardian in Virginia to receive it, and the executor making no interest; and that interest should have been disallowed during the war—the executor being in Virginia and the legatees in Missouri.

The executor took the assets into hand, held and used them, and we must presume that he made the interest; and it was his duty to have applied to the court and have the fund invested in some safe interest bearing security; if he had done so, he would have avoided all liability and the legatees would have received the interest; and he having elected, instead, to keep the money and use it, until it suited his purposes to invest, nominally, the same amount of comparatively worthless Confederate treasury notes in Confederate bonds, and in that way discharge with a trifle his just liability to his testator's estate, must now be required to pay what he received and used, with interest.

In *Templeman* v. *Fauntleroy,* 3 Rand. 434, Judge Carr, speaking for the whole court, says: "I think the safe and sound doctrine is, that if the party, though restrained from paying, holds and uses the money (and we must presume he uses, if he continues to hold it), he ought to pay interest, because the owner of the debt has a right to the interest; because money is worth its interest; and if the holder does not think so, he has always the privilege of

bringing the money into court." So on the subject of interest against executors it is said: "Interest runs, and is not affected by the absence abroad of the creditor, nor even by the non-existence of the person entitled to the money, nor as is presumed by his hostile alienage." Sands' Suit in Equity, 537; 4 Min. Inst. 1239, and cases cited; *Burwell* v. *Anderson,* 3 Leigh, 348; *Anderson* v. *Burwell,* 6 Gratt. 405; *Bourne* v. *Mecham,* 1 Gratt. 292; *Leake's Ex'or* v. *Leake,* 75 Va. 800; *Crickard* v. *Crickard,* 25 Gratt. 410. And as to the question of interest during the war, it need only be added to what has just been said that there is no proof in the record that the legatees and executor were separated by hostile armies; on the contrary, the executor in his answer distinctly states, in defence of his investment in Confederate bonds, that these legatees were citizens of and subject to the Confederate States, and as much under the dominant control of the Confederate government as he was.

Upon the whole case, we are of opinion that there is no error in the decree of the court below, and the same must be affirmed, with costs to the appellees, which is ordered to be certified to the chancery court of the city of Richmond.

LACY, J., dissented in part.

DECREE AFFIRMED.