81   519
90   197

# Richmond.

## MORRISON AND ALS. v. LAVELL.

### MARCH 11th, 1886.

1. PERSONAL REPRESENTATIVES—*Statute of limitations.*—Action on fiduciary's bond is barred only after ten years from accrual of cause of action—that is, from return day of execution against fiduciary, or from time of right to require payment or delivery from fiduciary. *McCormick* v. *Wright,* 79 Va. 524.
2. IDEM—*Accounts—Decrees—Sureties.*—Where the settled accounts of administrator show that assets ample to pay all intestate's debts came into his hands it is not premature to decree against his sureties without first taking accounts in the suit.
3. IDEM—*Slaves—Refunding bonds—Devastavit.*—Administrator committed *devastavit* by turning over intestate's slaves and other personal property to the distributees without taking refunding bonds; and the fact that the slaves, if retained, might have been lost by emancipation, constitutes no defence to him or his sureties.

Argued at Staunton, but decided at Richmond.

Appeal from decree of circuit court of Rockbridge county, rendered August 17, 1883, in the chancery cause wherein Abraham Lavell was complainant, and S. B. Morrison, administrator of William M. Gold, deceased, and Daniel Brown and Andrew Patterson, sureties on his official bond, and others, were defendants. This is a sequel to the cause of *Lavell* v. *Gold's Administrator,* 25 Gratt. 473.

Opinion states the case.

*Tucker & Tucker* and *George L. Cochran,* for the appellants.

*E. Pendleton,* for the appellee.

HINTON, J., delivered the opinion of the court.

In the summer of 1857, William M. Gold, the intestate debtor, died, leaving a considerable estate, real and personal, and in August, 1857, S. B. Morrison, one of the appellants, qualified as his administrator, giving as sureties on his official bond Daniel Brown and Andrew Patterson, both now deceased, whose personal representatives are also appellants. Shortly after his qualification the administrator, as he admits, was informed that the appellee, Abram Lavell, held a claim against the estate of the intestate Gold, although the amount was not stated. In June, 1859, the administrator having refused to recognize and pay the claim, and the bond, which was the evidence of it having been accidentally lost, a suit in chancery was brought against the administrator to establish it. That cause was brought into this court on an appeal allowed to Lavell from a decree of the circuit court of Rockbridge, and on the 19th day of November, 1874, that decree was reversed with costs, amounting to the sum of $767.94. See *Lavell* v. *Gold's Administrator,* 25 Gratt. 473.

At January rules, 1876, Lavell filed a creditor's bill against the administrator and heirs-at-law of Wm. M. Gold, deceased, showing that an execution for these costs had proven unavailing, and asking that the lands of the intestate in the hands of his heirs be subjected.

At the same rules an amended bill was filed making the sureties of the administrator parties. And on the 10th of January, 1880, a final decree having been in the meanwhile pronounced by the circuit court of Botetourt, to which the

case had been transferred, fully establishing the debt after a litigation of twenty years, a second amended and supplemental bill was filed by Lavell, on leave granted, setting up the decree of the circuit court of Botetourt for the debts and costs, in addition to the previous decree of this court, and suggesting a *devastavit* as a basis for a personal decree against the administrator and his sureties.

It thus appears that the object of this suit is to make the money decreed by this court for costs in 1874, and the debt and costs decreed by the circuit court of Botetourt in 1878. The court below decreed in favor of Lavell, whereupon this appeal was allowed the appellants.

In their petition the appellants assign three errors, which will be noticed each in its order.

There is nothing in the first assignment of error—namely, that the sureties and Pulliam are protected by the statute of limitation. For, beyond doubt, the limitation on the bond of an administrator or executor in this State is ten years. Code 1873, chapter 147, section 8. *Franklin's Administrator* v. *De Priest,* 13 Gratt. 257; *Leake* v. *Leake,* 75 Va., 792. *Sharpe* v. *Rockwood,* 78 Va., 24. And the plaintiff's right of action first accrued, according to the express words of the statute, upon the bond of the administrator for the costs in the suit of *Lavell* v. *Gold's Administrator,* from the return day of his execution, which was on the first Monday in February, 1875, and the sureties were made parties, as we have before seen, in January, 1876, less than one year thereafter. And as to the second execution on the final decree of the circuit court of Botetourt, for the $2,849, rendered on the 29th of April, 1878, was after proceedings had been instituted against the sureties, so that it is simply impossible that the statute should apply in either case. Nor is there any ground for imputing laches to the plaintiff, for his claim has been continuously and persistently

pressed, as the record shows, from June 1859, less than three years from origin of the contract down to the present time.

Nor does there seem to be any more force in the next assignment of error, which is, that the court below decreed against the sureties without having first taken the proper accounts. For, as has been well said by the counsel for the appellee, the only object of taking an account would be to show that assets came to the hands of the administrator ample to meet all of the debts of the intestate, and that has already been done by the administrator in his own settled accounts as administrator. These accounts clearly establish, and that fact is not controverted, that there came into the hands of the administrator, during the first fourteen months after his qualification in cash, $9,236.28; in stock, farming implements, &c., $1,116.10; in bonds and accounts due to the intestate, $1,475.47; and in slaves $10,125, making a grand total of about $22,000. And the account further shows that out of this large amount, of which about $11,000 in round figures was cash, he paid every debt due from the intestate, except the debt due to Lavell; and besides divided between himself and Pulliam as distributees of William M. Gold, deceased, in right of their wives, the whole of the stock and farming utensils, amounting in value to the aforesaid sum of $1,116.10. It is therefore clear that if interest on this amount be added from the date of distribution; we will have an aggregate of more than $2,600 on this item alone, which would have extinguished nearly two-thirds of the plaintiff's entire demand. And that the administrator committed a *devastavit*, for which he and his sureties are liable not only in distributing this personal property, but in paying the debts of the estate in full except Lavell's, and reserving nothing to pay him, and in distributing instead of hiring out the slaves, seems too plain for argument. 2 Lom. on Executors, 295–6. And that he also committed a

*devastavit* in not taking refunding bonds when he turned over the slaves and personal property to the distributees is equally clear. *Lewis* v. *Overby*, 31 Gratt. 601.

Nor can the circumstance that the slaves would probably have been emancipated if they had been retained by the administrator, which constitutes his last assignment of error, avail him anything. For the character of any act is fixed by the impress which the law puts upon it at the time it is done, and cannot be changed or altered by anything which may happen after it which had no causal connection with the act at the time it was done. When, therefore, this administrator deliberately, and with a knowledge that the appellee claimed to have a debt against the intestate's estate, which he proposed to collect, parcelled out these slaves and the personal property between himself and Pulliam, as by voucher No. 44, filed by him before the commissioner who settled his accounts, he unquestionably shows he did, he committed what the law denominates a *devastavit*, and this act cannot be deprived of the character of a *devastavit* by the mere conjecture that they would have been emancipated; for *non constat*, that they would not have been disposed of by Morrison and Pulliam as they did with all of the other personal property which they received.

It is needless to elaborate these views or to comment on the testimony further, as they sufficiently indicate the grounds upon which the case must, in our judgment, inevitably turn; and we will only add that the decree appealed from is plainly right and must be affirmed.

DECREE AFFIRMED.