# CHARLESTON.

BLAND et al. v. STEWART et al.

Submitted June 10, 1891.—Decided December 12, 1891.

1. DECREE—PARTIES—RES JUDICATA.

    Where a bill in equity neither makes one a party nor contains matter touching him and asks no relief as to him, any decree touching him is void and not res judicata.

2. ADMINISTRATION—DECREE—ACCOUNTS—RES JUDICATA—BAR.

    Settlement of accounts of administrator and decree confirming same, he not being a party and no matter touching such accounts or his administration appearing in the bill, will not, on the ground of res judicata, bar a bill brought to surcharge and falsify such account by those who were parties to the suit in which such settlement was made.

3. ADMINISTRATION—ORDER OF REFERENCE—SETTLEMENT.

    An order of reference in such cause provides for certain objects of reference, but not for such settlement. After specifying such objects it contains a clause requiring the commissioner to report upon such other matters as he may deem pertinent or any party require. Such clause will not justify such settlement, it not being pertinent for want of matter touching it in the bill.

4. ADMINISTRATION—DECREE—APPEARANCE—RES JUDICATA.

    The appearance of the administrator before the commissioner and making such settlement will not make him a party or bring the matter of the administration into the cause so as to render the decree upon it res judicata as to any party.

5. ADMINISTRATION—SETTLEMENT—LACHES.

    But parties to such suit interested in such settlement having actual knowledge of it, delay bringing a suit to surcharge and falsify such settlement and to have a settlement of the administration for very nearly ten years after its confirmation; and because of such laches and the loss of important papers touching the matters of the account, relief will be denied them.

*Ewing, Melvin & Riley* for appellant, Stewart, cited Big. Estopp. (4th Ed.) 661 ; 16 W. Va. 59 ; 23 W. Va. 195.

*G. H. Umstead* for appellant, Stewart, cited Fisher's Dig. 4757; Acts 1872–3, c. 119; 24 W. Va. 699; Schou. Exrs. & Adm'rs 526, 528 (note 2); 6 Rich. Eq. 302; 15 W. Va. 692; 24 W. Va. 551; 2 Sto. Eq. Juris. (9th Ed.) §§ 1540, 1541; Big. Estopp. 639; 3 Johns. Ch'y 416; 20 W. Va. 223.

No appearance for appellee.

BRANNON, JUDGE:

Appeal from a decree of the Circuit Court of Wetzel county, taken by Thomas D. Stewart in a suit wherein Joseph Bland and others were plaintiffs, and Thomas D. Stewart, administrator of Elizabeth Bland, and others, were defendants.

The bill was filed to have a settlement of the accounts of Thomas D. Stewart as administrator of the personal estate of Elizabeth Bland, and the decree made Stewart liable for seven hundred and ninety two dollars and ninety cents. One ground of defence to the suit overruled by the Circuit Court was that of estoppel by record. As pertinent to this defence, I state these features of the case. Joseph Bland, on 28 July, 1876, brought a chancery suit in Wetzel Circuit Court against Henry Bland and others, to have a sale of a tract of land owned by Elizabeth Bland at her death, on the ground that it could not be partitioned, and to have its proceeds divided among the plaintiff and the defendants as her descendants to whom the land descended. Stewart was not a party, and no settlement of the administration accounts was sought by the bill. A reference to a commissioner was made to ascertain what amount of land the party deceased died seized of, and to whom it should properly descend, and the interest of each party to the cause, and whether the widow of Samuel Bland would take her dower in money, "and any other matter deemed pertinent by said commissioner or required by any one having an interest in said cause." Notice to creditors of decedent was required to be published.

The commissioner, among other things, made a settlement of the accounts of Thomas D. Stewart as administrator, Stewart appearing before him for that purpose, and found a balance due from him of two hundred and four

dollars and eighty cents, which he paid into the hands of the commissioner making the settlement; and the court pronounced a decree confirming the report and directing the commissioner having said money to pay it to the general receiver, and directing the sale of the land. The defendant, Stewart, pleads this settlement and its confirmation as a bar against the settlement asked by the present suit brought 15th February, 1887.

This Court is of the opinion that this position can not be sustained. The administrator was not a party, and there was no allegation or matter in the bill touching the personal estate, or his administration of it, and no relief asked as to him or it, and Stewart was not served with process. If a person is not named in a bill, and no allegation with reference to him appears therein, even if he is named in the summons, and he is served with process, he is not a party, and any decree against him would be void and not *res judicata;* and though named in the prayer of the bill and in the summons, and served with it, but there is no allegation as to him, he is not a party, because there is nothing in the bill to which he could answer, and his rights are not adjudicated. *Chapman* v. *Co.,* 18 W. Va. 184; *Renick* v. *Luddington,* p. 536 of 20 W. Va.; in *McNutt* v. *Trogden,* 29 W. Va. 471. When the court ordered a person to be made a defendant and process issued and was served upon him, but the bill was not amended so as to incorporate matter touching him, it was held that the court had no jurisdiction over him and any decree against him was void. *McCoy* v. *Allen,* 16 W. Va. 724.

The estoppel must spring from the force of the adjudication. Here it was void because Stewart was not a party, and there was nothing in the bill touching him or the personal estate of decedent. Would the decree finding a certain amount due be conclusive in his favor against the distributees as to the amount it found? Certainly not. An estoppel must be mutual, or it is no estoppel. " A party will not be concluded against his contention by a former judgment, unless he could have used it as a protection, or the foundation of a claim, had the judgment been the other way; and conversely no one can claim the *benefit* of a judgment as an estoppel upon his adversary unless he would

have been prejudiced by a contrary decision." 2 Black. Judg. 548.)

There was no order of the Court to make this settlement. Its subsequent adoption of it could not validate it, because neither the party nor the matter was before the Court. The settlement could not be justified under the clause of the order of reference to report any matter deemed pertinent or required by the parties. That clause must be construed to refer only to matter of the bill and the parties thereto, otherwise such matter could not be pertinent.

The presence of the plaintiffs, or some of them, in the room where the settlement was made would not bind them by it as if parties. There is no evidence, except by depositions in this case, of such presence, for they took no part in the settlement, entered no appearance in it, claimed or contested nothing, made no exceptions. A party it was held would not be bound by decree where he was not served with process, though it were proved that he took part in the preparation of the defence. He must appear in Court. *Lyle* v. *Bradford*, 7 Mon. 111. Therefore, the proceedings in the former suit do not by their own force furnish a bar to this suit as *res judicata*.

But, nevertheless, that settlement and its confirmation coupled with the circumstances connected with it and the delay of nearly ten years to bring this suit afford, in the opinion of this Court, a bar, not as an estoppel by record or *in pais*, but by reason of laches and staleness.

All these plaintiffs except perhaps one (and he resided with one of the active parties) knew of the settlement, as they were present when it was made; at its conclusion they saw Stewart pay over to the commissioner the balance found due, he acting in evident good faith believing it was all right. True, he had no right to make the payment, and on the principle that every man must take notice of the law applicable to his action, he knew he had no right to pay it; yet he did so, and the plaintiffs knew it. They did not go into court and except. I concede, however, they were not bound to do so, though it is an item in summing up their inaction under the head of laches. They knew of the er-

ror of this payment and of any error in settlement. The settlement was made and filed in court and acted on in open court. Why did they not, in that suit, or in an independent suit express their dissent from this action and enforce their rights within a reasonable time? It is to be added that the commissioner says he devoted this money to their benefit, and specifies a few items, but says he thinks the vouchers were lost in the memorable flood in the Ohio river in 1884. Thus, there is a loss of papers to show the disposition of the two hundred and four dollars and eighty cents, a circumstance of moment under all the cases touching accounts.

The report is dated 12th March, 1877; it was confirmed 9th April, 1877; this suit began 15th February, 1887; Elizabeth Bland died about 25th December, 1874.

What period ought to be assigned as a bar in equity? Confessedly there is no statute of limitation viewing the bill either as a bill for an account or as a bill to surcharge and falsify the former account. Barton Ch'y Pr. 90, 119. The bill in this case attacks the former settlement and specifies errors in it, and prays that it be surcharged and falsified. The plaintiffs elect to so treat it, and I think it should be treated by analogy to a bill to surcharge and falsify. There being no statute fixing precise limit to such a bill, a court of equity will apply the doctrine of laches and staleness of demands and fix a term according to the circumstances of each case. This has been the Virginia practice in a long line of decisions, various periods having been assigned in various cases. Note 1, p. 90, Barton's Ch'y Pr.

The Va. Code of 1849, ch. 132, s. 23, provides as to *ex parte* settlements of fiduciary accounts, that " the report, to the extent to which it may be so confirmed, shall be taken to be correct, except so far as the same may be, in a suit in proper time, be surcharged and falsified." Such is our Code, c. 87, s. 22. This statute fixing no period simply recognizes the practice in courts of equity as it had always been, in short, leaving each case stand on its features under the doctrine of laches, staleness and acquiescence. It is not easily explained why such an important matter has not been provided with a fixed limitation by the legisla-

ture, but left at sea. It would seem wholly unreasonable that a settlement made in good faith before a public officer and approved by a county court should stand for many years open to attack in view of limitations in other cases. Why should it thus stand open for ten years? In *Janney* v. *Lupton*, 13 Peters 381, a case arising in Alexandria, while it was in the District of Columbia, the U. S. Supreme Court said in reference to *ex parte* settlements by executors in the Orphans Court, that if any one sought to "impeach them, it should be by suit brought *recenti facto*, within a reasonable time, and at farthest within a period prescribed by the statute of limitations for actions at law on matters of accounts; or else assign some ground of exception or disability within the analogy of the statute to justify or excuse delay. Otherwise, it will be imputed to their voluntary laches, and relief will not be given by a court of equity." Judge STORY delivered the opinion, and said a delay of twelve to sixteen years would defeat the relief then. The action of account, if that be the test, is five years. I can not say that this principle of analogy to the limitation on bills to surcharge and falsify has been followed in the two Virginias; nor do I know of any case in which, upon consideration of the point, it has been rejected.

In *Pusey* v. *Gardner*, 21 W. Va. 469 and *Trader* v. *Janis*, 23 Id. 100, the general principle is asserted, and I think it applicable here, that delay in the assertion of a right, unless satisfactorily explained, even where it is not a statutory bar, "operates in equity as an evidence of assent, acquiescence or waiver." Lord Camden's notable language has come down from 1767 and is stamped with unanimous approval by courts and text writers: "A court of equity, which is never active in relief against conscience, or public convenience, has always refused its aid to stale demands, where the party slept upon his right and acquiesced for a great length of time. Nothing can call forth this Court into activity but conscience, good faith and reasonable diligence. Where these are wanting, the court is passive and does nothing. Laches and neglect are always discountenanced and therefore from the beginning of this jur-

isdiction there was always a limitation to suits in this Court." See extended notes upon laches and State demands in *Smith* v. *Thompson*, 54 Am. Dec. 130, and *Frame* v. *Kenny*, 12 Am. Dec. 368.

If the settlement referred to and acquiesced in *for ten years as above stated, were not in the case, I would reach a different conclusion. It was made as a final settlement, and thereafter no active trust or fiduciary relation between the parties existed as before—they were at arms' length.

The decree is reversed and the bill dismissed.

REVERSED.