# CHARLESTON.

### PLANT v. FITTRO.

Submitted June 10, 1908.   Decided February 9, 1909.

GUARDIAN AND WARD—*Release of Guardian—Attempt to Surcharge Settlements.*

    Where a ward, after several official settlements of the accounts of his guardian, knowing of such settlements, or with ready means of knowing, and having attained his majority, accepts the same as correct, and receives payment of the sum found by the last settlement, and executes a release to his guardian, though the guardian invaded the principal of the ward's assets for the benefit of the ward and his land without court

authority, and the ward suffers nearly nine years after such re-
lease to pass before suing to surcharge and falsify such settle-
ments, equity will deny relief. (p. 149.)

Appeal from Circuit Court, Harrison County.

Bill by William G. Plant against Dexter G. Fittro and others.
Decree for defendants, and plaintiff appeals.

*Affirmed.*

E. G. SMITH, for appellant.

DAVIS & DAVIS, for appellees..

BRANNON, JUDGE:

Dexter D. Fittro was appointed guardian for William G.
Plant. Plant derived from his father a tract of ninety-two acres
of land and some personal estate. The guardian received in
1888 upwards of $500 from the personal estate, and in 1892
some money from the sale of coal under court decree. The guard-
ian made regular settlements before a commissioner as required
by law during the infancy of his ward, and when the ward attain-
ed twenty-one the guardian made his last settlement, by which a
certain sum was found by the commissioner as the balance due
from the guardian to his ward. Plant was present when this
last settlement was made, and was informed fully of the balance
due from his guardian, and the commissioner drew up a receipt
in full payment of that sum and releasing the guardian from
further liability, and the guardian then and there paid. Plant.
That receipt dates 24th December, 1893. These official settle-
ments were duly confirmed. Eight years, nine months and
twenty-five days after that receipt Plant brought a chancery suit
in Harrison county to surcharge and falsify those settlements,
and the court dismissed his bill, and this is an appeal from that
decree.

It is very clear that the guardian, without authority from a
court, invaded the principal of the fund in his hand, and that
but for that receipt the ward could have made the guardian
liable for more money than he paid him because of that statute
which prohibits a guardian from using any of the infant's prin-
cipal without court authority; but there is that receipt and
release. Judge Lynch in an opinion filed in the circuit court
held that that receipt coupled with long acquiescence in it,

65 W. Va.

nearly ten years, barred relief. We concur in that opinion. It appears that the infant and his land got the benefit of the money spent by the guardian. The guardian had no right to so apply the money; but there is nothing immoral in it, and the ward could ratify and confirm such expenditure after becoming of age. There is no question but that Plant knew of the money that went into Fittro's hands. It consisted of but a few items and Plant living in Fittro's family had every means of so knowing. His guardian swears that during the infancy of Plant he communicated to him his disposition of the money. Plant does not deny this, but on the contrary states that Fittro when he would go to make settlements before a commissioner would show him the papers relative to them and get him to sign the papers and thus approve them. Several times Plant went with Fittro before the commissioner. Thus with full knowledge, with his eyes open to all the facts, with ample means of information, with actual information of these transactions, Plant executed that release and received the money specified in it. There is no evidence of any fraud. True, Plant says that his guardian and the commissioner told him what balance was due him, and he knew no better. Why did he not? And this is disputed by the fact that as he says himself his guardian presented the papers to him relative to their business. Plant was by no means an imbecile. He was a boy of great physical strength. He attended school, and says that he could read well, perhaps taught school, and was entirely competent to inspect the papers touching his rights. He shows full intelligence as a witness. There is no evidence of fraud on the part of Fittro. No suppression of facts. With full knowledge, and with full opportunity and means of information, Plant chose to ratify the action of his guardian by a solemn written instrument. Not that only, but he slept for nearly ten years acquiescing in that settlement and release. If he did not intend to stand to it, why did he let it stand so long? Not only is this the case of the lapse of a long time before suit to surcharge and falsify an official settlement, but superadded there is a receipt and release of nearly ten years standing by a party not absent, but right on the ground, at home. Even where there is not the circumstance of such release, courts of chancery do not tolerate long delay in bringing a suit to surcharge and falsify settled accounts. In *Bland* v. *Stewart,* 35

W. Va. 518, we so held in the case where suit was not brought for nearly ten years, and we quoted from *Janey* v. *Lupton,* 13 Peters 381, that as to such settlements suit "to impeach them should be brought *recenti facto* within a reasonable time, and at farthest within a period prescribed by the statute of limitations for actions at law on matters of account, or else assign some ground of exception or disability within the analogy of the statute to justify or excuse delay. Otherwise it would be imputed to voluntary laches, and relief will not be given by a court of equity." If the limitation of the action of account is to govern, it would be five years.

As to the claim based on the mere statement of Plant that he did not know what charges were made against him, or what was really due. He says himself that while yet an infant his guardian showed the papers to him preliminary to settlement. Fittro's evidence is specific and emphatic to the same effect. But this plea cannot avail. There were these settlements of record open to the inspection of Plant during his minority and afterwards, and he let years and years pass without availing himself of information which would be imparted by them. Angell on Lim., sec. 187, says that the presumption is that if a party to be affected "by any fraudulent transaction or management might with ordinary care and attention, have seasonably detected it, he seasonably had notice of it." This party after age waited nine years. When is there to be peace? Chief Justice Fuller said that equity "will discourage stale demands, for the peace of society, by refusing to interfere where there has been gross laches in prosecuting rights, or where long acquiescence in the assertion of adverse rights has occurred." *Hammond* v. *Hopkins,* 143 U. S. 224. In *Wetzel* v. *Minn. R. R. Co.,* 169 U. S. 237, Justice Brown said: "The truth is there must be some limited time within which these excuses shall be available. The interests of public order and tranquility demand that parties shall acquaint themselves with their rights within a reasonable time, and, although this time may be extended by their actual ignorance, or want of means, it is by no means illimitable." In *Harold* v. *Barlow,* 47 W. Va. 750, we quoted from the *Lafferty Case* in 42 W. Va. 792, this: "And the law is where one has means of knowledge of a fraud, or sufficient notice to put him on inquiry, it is enough to count time against him. Where he

has means of knowing or ascertaining, where he is put on inquiry, where ordinary prudence for his interest suggests that he inquire, he must do so, or else time runs." The United States Supreme Court says in *Foster* v. *R. R. Co.,* 146 U. S. 99, that "The defense of want of knowledge on the part of one charged with laches is one easily made, easy to prove by his oath, hard to disprove, and hence the tendency of the courts in recent years has been to hold the plaintiff to a rigid compliance with the law which demands, not only that he should have been ignorant of the fraud, but that he should have used reasonable diligence to have informed himself of all the facts. Especially is this the case where the party complaining is a resident of the neighborhood in which the fraud is alleged to have taken place." *Badger* v. *Badger,* 2 Wall. 94, and much other authority, tells us that the party who makes such appeal must set forth in his bill specifically what were the impediments to the earlier prosecution of his claim; how he came to be so long ignorant of his rights and the means used to fraudulently keep him ignorant. And that case, as also *Sullivan* v. *Portland,* 94 U. S. 806, says that where facts alleged in the bill disclose laches the court will refuse relief on its own motion, even where the defense of laches is not pleaded. Plant would tell us that after his father's death his mother married Fittro and that he lived in the house with them, and appeal is made to the doctrine that relationship and membership in the same family have bearing to excuse laches. So it has some times. *Depue* v. *Miller,* decided this term. But if the delay is sufficient to destroy evidence it will even in a question with kinsmen deny relief. 18 Am. & Eng. Ency. L. 113. In this case, however, Plant ceased to reside in the family of Fittro 10th May, 1894, having become of age, and went on his own farm. And he did not sue thereafter for nearly eight years. It is also pleaded that Plant and Fittro were partners in a drug store for two years, but that relation closed in 1896, and suit was not brought for six years later. These are not adequate excuses.

But there is another reason why laches will prevail; and another reason why we should not nullify and ignore that settlement and receipt. It is well established in this case that Fittro's vouchers filed with the commissioner when he made his first settlement covering receipts amounting to $526.50 were lost by

the commissioner without fault of Fittro. That settlement was never filed in the clerk's office, but was lost. Fittro and Plant went to the commissioner's office to find the vouchers and had search made for them, but the commissioner, a man of great age, was then becoming insane—at the date of the search—and the papers never were found. The loss of important papers, essential to justice, is always considered by equity as going far to deny relief in case of long past transaction. How could the account of this guardian be reheard and settled with any degree of safety to Fittro? Those lost vouchers concerned a large fraction of the money in this case. We repeat that that release made not only with full means of knowledge, but with full knowledge of the facts, and long acquiesced in, and the lost vouchers call upon us to affirm the decree. And now Fittro is dead, so that his evidence could not supply the lost vouchers.

*Affirmed.*