# CHARLESTON

## ONEAL *v.* STIMSON.

Submitted September 12, 1906.     Decided March 19, 1907.

1. INFANTS—*Action Against—Guardian, Ad Litem.*

   A bill for the partition of lands in which infants are part owners and not named in the caption of the bill or otherwise, except incidentally as wards of A. B. their guardian who is sued as administrator and guardian. *Held:* Said infants are not thereby made parties to the suit; and it is not competent for the clerk of the circuit court to appoint a guardian *ad litem* for such infants in said cause as if they were defendants in the suit. (p. 553.)

2.   SAME —*Filing of Answer.*

In such case the filing of an answer by such guardian *ad litem* for such infants is improper and wholly without effect.   (p. 554.)

3.   SAME—*Judgment.*

The infants not being parties to the suit, their rights cannot be adjudicated therein and a decree entered is null and void as to them.   (p. 556.)

4.   PARTITION—*Decree—Effect of Parties.*

A decree of partition rendered in a suit in which all the persons in interest were not parties is null and void.   (p. 556.)

5.   SAME —*Sale of Land.*

In proceedings for partition, a decree for the sale of the land and a distribution of the proceeds cannot be made without there has been an averment and proof of facts showing that the lands cannot be fairly divided or equitably partitioned.   (p 556.)

6.   TENANCY IN COMMON—*Rights of Co-Tenants--Adverse Possession.*

Syllabus, points 2, 3 and 4, *Justice* v. *Lawson*, 46 W. Va. 163, approved and applied.   (p. 558.)

7.   EQUITY—*Bill—Defect of Parties.*

A defective bill in equity, rendered bad on demurrer by failure to name therein as defendant a necessary party, is not cured by entering an order in the case dismissing the suit as to such party, he in no way being a party thereto.   (p. 560.)

(POFFENBARGER, JUDGE, Absent.)

Appeal from Circuit Court, Wyoming County.

Bill by Joseph P. Oneal and others against L. T. Stimson and others.   Decree for defendants, and plaintiffs appeal.

*Reversed.*

JOHN E. BLAKE, GILMORE & WORRELL and T. G. MANN, for appellants.

MARVIN T. BOWMAN and McGINNIS & HATCHER, for appellees.

McWHORTER, JUDGE:

Without commenting on the condition of the record, especially of the many bills, in this cause, for surely "it is wonderfully and fearfully made," I will state that it appears to be a suit for the purpose of setting aside decrees rendered by the circuit court of Wyoming county in 1889 and 1900 in a suit for partition by sale of land and division of the pro-

ceeds among those entitled and also to set aside and cancel a
conveyance of real estate sold under such decrees made and
executed on the 21st day of October in the year 1900. It ap-
pears that Nicti Oneal and D. J. Oneal were the owners of a
tract of 40 acres of land on the waters of Slab Fork of Laurel
Fork of Guyandotte River in Wyoming county; that the said
Nicti Oneal died in the year 1887 intestate and that her hus-
band, John Oneal, also died intestate in 1888, leaving twelve
children their sole heirs at law, namely: William Oneal, J.
H. Oneal, Hiram Oneal, Rachel Oneal, Joseph P. Oneal,
Andrew Oneal, D. J. T. Oneal, Mary Allen wife of Robert
Allen, Rebecca Hager wife of J. O. Hager, James R. Oneal,
Nancy Milam wife of Lewis Milam, and John R. Oneal. That
William Oneal, one of the heirs at law, filed his bill in said
Wyoming circuit court at the March rules, 1889, naming as
defendants thereto J. H. Oneal, Hiram Oneal, Rachel Oneal,
Lewis Milam administrator of John Oneal, deceased, and
guardian of Andrew Oneal, Joseph P. Oneal and D. J.
Oneal, the last three infants, children and heirs at law of
John and Nicti Oneal, deceased, and Mary Allen late Oneal
and Rebecca Oneal, alleging that John Oneal, deceased, was
the equitable owner of the said 40 acres of land and that on
the 5th day of June, 1882, he caused said land to be conveyed
to Nicti Oneal jointly with D. J. T. Oneal; that Nicti Oneal
died seised of one undivided half of said tract of land and
that one undivided half was given to said D. J. Oneal as a
portion; that plaintiff was one of the sons and heirs at law
of the said decedents as also were the defendants J. H. Oneal,
Hiram Oneal, Rachel Oneal, Rebecca Oneal, Andrew Oneal,
John Oneal, D. J. Oneal, and Mary Allen, late Mary Oneal,
and as such were entitled to a partition of said land, and that
plaintiff was desirous to have said land sold and the proceeds
divided amongst the heirs except D. J. Oneal, one of the
heirs, who should not be allowed to participate in the un-
divided half of which Nicti Oneal died seized without bring-
ing his half into hotchpot; and prayed that the land be sold
and proceeds divided accordingly. Plaintiff William Oneal
filed an amended bill against the same defendants and James
R. Oneal, John R. Oneal, Nancy Milam and Lewis Milam
praying that the said 40 acres be sold and the proceeds
divided. The court appointed commissioners who divided

the tract, giving D. J. Oneal 22 acres, setting the same apart to him and 18 acres to the other heirs. The court decreed the 22 acres to said D. J. Oneal and the sale of the 18 acres to divide the proceeds thereof among the heirs. The same was sold under said decree by Commissioner Col. Childers, appointed for that purpose, which sale was confirmed to the purchaser L. T. Stimson.

Joseph P. Oneal and Andrew Oneal filed their bill in the circuit court of said county against L. T. Stimson, Julia Stimson, John Ball, Sallie Ball and others, purchasers of parts of the 18 acres so sold and conveyed to Stimson, who had laid off the 18 acres in lots and put them on the market, alleging that they were not parties defendants to the suit of William Oneal; that they were entitled to their interest in the said 40 acres and praying that the proceedings in the suit of partition of ~William Oneal, including the decrees and deed conveying the said 18 acres to Stimson, be declared null and void and the decree set aside and the deed cancelled. Four amended bills were filed by the plaintiffs, Joseph P. Oneal and Andrew Oneal, joining with them as plaintiffs James R. Oneal and Nancy Milam who alleged also that they were not made parties to the suit of William Oneal nor served with process therein and who also joined in the prayer to set aside said proceedings as null and void, and for partition of said 18 acres of land. The said 22 acres set apart to D. J. Oneal as his undivided moiety is not contested or brought in question in this suit.

The infants, Joseph P. Oneal, Andrew Oneal and D. J. T. Oneal, in said suit of William Oneal are not named at all as defendants. Lewis Milam is sued as administrator of John Oneal, deceased, and guardian of said three infants and this is the only manner in which they are named in the bill: that is, not as defendants but as being the wards of their guardian who is sued. Section 3857, Code 1906, (section 37, chapter 125) prescribes the form of a bill and that, "Every person designated in the caption of such bill as defendant shall be a defendant therein, without a prayer that he be made such and shall be required to answer the bill in the same manner and to the same extent as if he were therein called upon to do so." These infants are not mentioned in the bill as defendants but as wards of Lewis Milam their guardian

who is sued. There is no allegation touching the interest of these infants or in any way connecting them with the suit. That was a suit to partition or sell property in which they had an interest. In *Chapman* v. *Railroad Co.*, 18 W. Va. 184, it is held that, although a person be named in the prayer of the bill and also in the summons and served with process, yet if there is no allegation in the bill with reference to him, he is not a party to the suit. And if not a party his rights cannot be adjudicated therein. In *Cook* v. *Dorsey*, 38 W. Va. 196, it is held: "The bill must formally or in some plain, distinct way make parties plaintiff and defendant; otherwise, it is fatally defective, and a decree upon it would be null." And in *Preston* v. *West*, 55 W. Va. 391 (47 S. E. 152) it is held: "A person cannot be made a party to a bill by merely inserting his name in the caption thereof, but the bill must contain some allegation showing such person's interest or claim to interest in the subject matter in controversy."

In addition to the said infants there is no allegation in either the original or amended bill of William Oneal showing in any manner that John R. Oneal, James Oneal and Nancy Milam, or either of them, were among the heirs at law of John Oneal and Nicti Oneal. In *Preston* v. *West, supra*, the second and third points of the syllabus are as follows: "A bill which makes a person a party in the caption thereof but contains no allegation showing such person's interest or claim to interest in the subject matter in controversy, is demurrable." "If the circuit court overrules such demurrer and grants the relief asked in such bill as to the subject matter in controversy without having such nominal party properly impleaded as to such subject matter, although other pleadings in the cause show that such nominal party is claiming the whole of such property, such nominal party may appeal from such decree and have the same reversed." And in *Moseley* v. *Cocke*, 7 Leigh 224, where a bill in chancery was against several defendants, process issued against one not made a party defendant in the bill and against whom there was no allegation therein and no relief prayed and a decree was made against him by default and against other defendants, some of whom appealed where the decree was reversed as to the appellant and in all things else affirmed, it was held: "The decree was

a more nullity as to the party who was not named in the bill and as to whom the bill contained no allegation and prayed no relief." *McCoy* v. *Allen*, 16 W. Va. 724; *Shaffer* v. *Fetty*, 30 Va. 248 (4 S. E. 278); *Bland* v. *Stewart*, 35 W. Va. 518 (14 S. E. 215). In *Rexroad* v. *McQuain*, 24 W. Va. 32, it is held: "It is a cardinal rule in equity that all persons materially interested either legally or beneficially in the subject matter of the suit, must be made parties to the suit." In 17 A. & E. E. L. (1st Ed.) 810: "As a general rule, a decree of partition is considered as a unity and if bad in part it is bad as a whole. A decree may be impeached for fraud and a judgment of partition rendered in a suit in which all the persons in interest were not made parties is an absolute nullity." In *Succession of Ernest Poree*, 27 La., "Where a judgment of partition and sale was rendered without all the parties in interest being parties to the suit of partition, said judgment is an absolute nullity, and the sale made under it is also null and void." To the same effect is *Hull* v. *Cavanaugh*, 6 Mo. App. 143; *Jackson* v. *Brown*, 3 John. (N. Y.) 459; *Halloway* v. *Ilhenny*, 77 Tex. 657.

In the proceeding by William Oneal for partition there was no allegation that the land could not be partitioned in kind nor was there any prayer for partition in kind but for a sale and the division of the proceeds among the heirs, and there is no evidence in the case that it was not susceptible of partition; but the fact that that part sold, 18 acres, has since been divided into town lots and offered for sale and several sales made is evidence at least tending to prove that it was susceptible of partition in kind. In section 2027, 3 Kerr on Real Prop., it is said: "In proceedings for partition a decree for the sale of the land and a distribution of the proceeds cannot be made without there has been an averment and proof of facts showing that the lands cannot be fairly divided or equitably partitioned." Citing *Keating* v. *Terry*, 93 Ala. 85 (9 Sou. Rep. 524); *Benedict* v. *Torrent*, 83 Mich. 181 (47 N. W. 129), 21 Am. St. Rep. 589. *Hobeck* v. *Miller*. 44 W. Va. 635, Syl. pt. 3: "A purchaser from a purchaser under decree void for want of jurisdiction will not be regarded a *bona fide* purchaser without notice. He is bound to know the want of jurisdiction in the case." The decree for the sale of the 18 acres in said partition suit being void, the pur-

chaser is not protected under section 4003, Code 1906, (section 8, chapter 132); being void and not merely erroneous. In *Hull* v. *Hull*, 26 W. Va. 1, at pages 30–31, it is said: "But even on the decisions of the Supreme Court of the United States and of some of the states other than Virginia it is clear that the purchasers under the decree of September 5, 1868, in this cause cannot be protected; for the court obviously had no jurisdiction to enter this decree of sale, as it had no jurisdiction of the infants, whose lands were decreed to be sold, they never having appeared in the cause by guardian *ad litem*, the only way in which they could have appeared. This decree therefore cannot protect any of the purchasers under it. When this decree is reversed, because these infants were not before the court, the title of the purchasers necessarily falls in the reversal of the decree, for the reason that it was from the beginning void and of no effect. This Court had, as we have seen, no authority to order the sale of any of the lands of these infant-defendants, even if they had answered the bill by their guardian *ad litem*, when they had the legal title to the lands. The court having no jurisdiction to decree such sale in this cause, the purchasers of such lands cannot be protected by such decree, though the court has confirmed the sales made to them; and on a reversal of such decree the title of such purchasers must fall with such reversals. The title of most of the purchasers of these lands would thus fall, even if the guardian *ad litem* had filed an answer for the infant-defendants." *McNeal* v. *Aldridge*, 25 W. Va. 113, 118; *Dunfee* v. *Childs*, 45 W. Va. 155 (30 S. E. 102); *Underwood* v. *Pack*, 23 W. Va. 704; *Turk* v. *Skiles*, 38 W. Va. 404 (18 S. E. 561); *Calvert* v. *Ash*, 47 W. Va. 480 (35 S. E. 887).

In case at bar it is contended that plaintiffs Joseph P. Oneal and Andrew Oneal are estopped from denying that they were parties to the William Oneal suit because of the filing of the answer of their guardian *ad litem* F. P. Roach. The statutes provides only for the appointment of a guardian *ad litem* for infants who are parties defendant to the suit, and infants cannot be made parties, who are not made so by the pleadings, simply by appointing a guardian *ad litem* for such and the filing of an answer by a guardian *ad litem* so appointed can have no effect. He is not the guardian *ad*

*litem* of the infants because they are not parties to the suit and he was appointed without authority of law.

It is insisted by appellees that the plaintiffs were guilty of *laches* and also plead the statute of limitations. These plaintiffs who were infants at the time of the decree of William Oneal, not having been divested of their interest in the land, were co-tenants thereof with other owners whether by purchase or otherwise and could not be dispossessed without some act of ouster on the part of those in possession and it is not shown in the case that they had notice of any such act on the part of their co-tenants or any of them. In *Justice* v. *Lawson*, 46 W. Va. 163, Syl. pts. 2, 3 and 4, are as follows: "A tenant in common, out of possession has a right to rely upon the possession of his co-tenant, as one held according to the title, and for the benefit of all interested, until some action is taken by the other evidencing an intention to assert adverse and hostile claim." "One tenant in common may oust his co-tenant, and hold in severalty, but a silent possession, unaccompanied with any action amounting to an ouster, or giving notice to the co-tenant that his possession is adverse, cannot be construed into an adverse possession." "It is the intention of the tenant or parcener in possession to hold the common property in severalty and exclusively as his own, with notice or knowledge to his co-tenants of such intention that constitutes the disseisin."

The evidence touching the possession after the sale in the William Oneal case of the 18 acres is very meager. Several witnesses testify that they were frequently through the premises and it had all the appearances of an old waste place and no indication of cultivation or occupancy whatever. One witness testified that he occupied it, taking the possession from another who had occupied it under Stimson for one year soon after his purchase, and that he had cultivated it in a small way every year since up to the time of turning it over to Stimson. Stimson was placed on the stand by the plaintiffs and was shown a copy of his deed from Col. Childers, special commissioner, dated October 21, 1890, and was asked if that was the deed under which he claimed title to the land in controversy, when he testified as follows:

"A.   Yes, sir, I think this is a copy of it.

Q.   How long after the date of this deed, October 21,

1890, until you in some manner used or occupied, either yourself or by tenant, the said land described in said deed or some part thereof?

A.    My recollection is in the spring of 1892.

Q.    Did you ever rent said land to any one?

A.    As I stated in the other answer, as well as I can remember in the spring of 1892 I did agree to let a man have the place.

Q.    Who was the man?

A.    It was Tom Milam.

Q.    For how long did you rent it to him?

A.    There was nothing said about the time how long he was to have it.

Q.    State whether or not it is a fact that you only rented it to him for one year.

A.    There was not anything said about the time.

Q.    State in substance what the contract was that you had with him?

A.    Mr. Milam was at my house, asked me if I had not bought a piece of land on Slab.   I told him that I had.   He asked me what I would take to let him tend the bottom.   I told him to go ahead and tend it as long as he wanted to.

Q.    Do you know how long he tended it?

A.    I don't know that he tended it at all.

Q.    As a matter of fact, don't you know that he did not tend it over 3 years?

A.    I don't know anything about it, whether he tended it 3 or 4 years.   Three years ago last July when I was on the land on Slab, there was fence running up the hill at the upper end of the bottom, and poles laid across the road that I had to let down before I could let my horse through; I thought it was a kind of a turnback to keep his property inside and other people's outside.

Q.    Where did Tom Milam live at that time, and if he did not live on the tract of land that you claimed to have rented to him, how far away from it did he live?

A.    He lived between a mile and a half and two miles away from it."

So it does not appear from the testimony of the defendant Stimson himself that he knew whether he had possession or not, he seemed to have paid very little attention to the prop-

erty until recently before the bringing of the suit. He did not support, in his testimony, the averments of his answer that, from the time of the purchase of the real estate in question he had been "in the actual, open, visible, notorious, distinct and hostile possession of said land claiming it as his own, all of which facts are well known to the plaintiffs in this case." And yet, from his testimony, it does not appear that such facts were even well known to himself.

It is assigned as ground of demurrer that William Oneal, who was the plaintiff in the original suit for sale or partition, was not made a party to the suit at bar. This is good ground of demurrer as he was a necessary party. *Harwood* v. *Railroad Co.*, 17 Wall. 78. Plaintiffs attempted, however, to correct this defect by having an order entered in the case dismissing said William Oneal from the suit, which order was entered on the 29th of March, 1904, where it appears that, "On motion of the plaintiff, William Oneal, this suit is dismissed as to him," and that the said William Oneal admitted that as far as his claim was concerned the answer of the defendants to the first amended bill· was true and valid, and that he relinquished his right, title and interest to said Stimson and wife and their grantees. In the order William Oneal is described as "the plaintiff," when in fact he was not a party to the suit either as plaintiff or defendant. The order was nugatory as to curing any defect in the bill or as to dismissing him from the suit, when he had not been a party thereto in any manner. The plaintiffs may be permitted, if they so desire, to amend their bill in the circuit court so as to make all needful parties.

The decree of the circuit court is reversed and set aside and the cause remanded for further proceedings to be had therein.

*Reversed.*