# CHARLESTON.

## CHAMP *v.* COUNTY COURT.

Submitted March 8, 1911.    Decided May 6, 1913.

1. EMINENT DOMAIN—*Injunction—Road Established by Acquiescence—Right to Use—Estoppel.*

    Where a landowner, with full knowledge and without protest, permits a county court, under *bona fide* claim of right or an agreement evincing intent to dedicate a way for a public highway, to expend money and labor in fitting it for such use, he can not, after establishment, maintenance and public use thereof continuously for three years, prevent by injunction further use of the land for the purpose so intended. (p. 479).

2. ESTOPPPEL—*Grounds—Acquiescence.*

    When a party, with full knowledge of his right and all material circumstances, freely and advisedly does anything which amounts to recognition of a transaction, or acts for a considerable length of time in a manner inconsistent with its

repudiation, there is acquiescence; and the transaction, although originally impeachable, becomes unimpeachable in equity.  (p. 481).

3.  SAME.

Acquiescence may bar relief in a very short period.  Where one stands by without objection and sees others dealing with property in a manner inconsistent with his right, and by his silence permits or encourages them to part with their money or property, he can not complain.  His silence is acquiescence, and estops him.  (p. 481).

4.  DEDICATION—*Implied Dedication—Acceptance—Right to Recall.*

If the acts of the landowner are such as would fairly and reasonably lead an ordinarly prudent man to infer an intent to dedicate a way for a public highway, and they are received and acted upon by the public, the owner can not, after acceptance by the public, recall the appropriation.  (p. 482).

5.  SAME—*Implied Dedication—Estoppel—Secret Intent.*

Regard is to be had to the character and effect of the open and known acts, not to any latent or hidden purpose.  If they are such as to induce the belief that the owner intended to dedicate the way, and the public individuals act upon such conduct as if in fact there had been a dedication, and acquire rights which would be lost if the owner were allowed to reclaim the land, the law will not permit him to assert that there was no dedication, no matter what may have been his secret intent.  (p. 482).

Appeal from Circuit Court, Nicholas County.

Action by E. T. Champ against the County Court of Nicholas County and others.  From decree for plaintiff, defendant named appeals.

*Reversed, Injunction Dissolved, Bill Dismissed.*

*S. R. King,* and *Mollohan, McClintic & Mathews,* for appellant.

*Brown & Eddy,* and *T. C. Townsend,* for appellee.

LYNCH, JUDGE:

From a final decree perpetuating an injunction restraining defendant from removing certain obstructions placed by the plaintiff in the public highway, the legal establishment of which through his land is controverted, the defendant appeals.

In June, 1905, the county court of Nicholas county appointed

viewers to locate a way for a public road "leading from a point on the public road near J. W. Bragg's residence * * * and extending to the mouth of Anglins creek," with direction to report at the next regular term. The report, made pursuant thereto, shows that plaintiff's lands lay directly between the terminal points designated in the order, and that the road as projected passes through his lands. It affirmatively appears, and virtually is not denied, that plaintiff joined with others in promoting the establishment of the road over lands owned by him and others along the route, although he did not sign the petition to the county court therefor, because of his temporary absence from the community at the time the petition was prepared, signed and presented. It likewise also appears that he was present, with other land owners, at the time of the preliminary survey, when a discussion arose as to claims for damages to the several land owners, all of whom except plaintiff then agreeing not to assert claim therefor if all joined therein, to which plaintiff at first refused his consent. But the proof shows, and plaintiff substantially admits, that he then stated that he would give the land for the road provided it was located and opened along his outside farm line, the reason assigned by him therefor being that thereby he would avoid the necessity and expense incident to the construction and maintenance of lane fences. The viewers thereupon changed the route, complying with his suggestion, and later reported to defendant, the county court, the way viewed by them through the lands of plaintiff and others whose lands were thereby affected. But defendant did not, as required by § 36, Ch. 43, Code 1906, "appoint a day for hearing the parties interested, and cause notice thereof to be given to the proprietors and tenants of the property, which would have to be taken or injured, to show cause against the same." But, by an order entered of record, December 13, 1905, the court "located and established a public road upon the location as shown in the said report," and thereby directed the surveyor of the proper road precinct to expend thereon "the forty dollars donated by G. A. Burr, Marshall McClung and Jacob Bays in opening said road on said location from John W. Bragg's to the land of Jacob Bays," the plaintiff's land intervening between the two.

Plaintiff urges, as grounds for relief, defendant's omission

to comply with the statutory provisions cited, and its failure to compensate him in damages for his lands which it thus attempted to appropriate to public use.  He also denies that defendant in fact established and opened the road as a public highway, or that the public used the same as such since its order of December, 1905.  He therefore insists that defendant is without warrant of authority to remove the obstructions placed thereon by him, and from removing which he seeks to maintain the injunction awarded and by the circuit court made perpetual.

While defendant did not, as stated, strictly comply with the formalities usual, in fact required by statute, its failure in that respect may, with propriety, be traceable to plaintiff's conduct.  Acting upon the good faith of his promise—and, in effect, what he said is the equivalent of a promise—not to claim damages provided the road was located as suggested by him, the viewers reported, and the county court, as it might under the circumstances, accepted, as true, the report, that "neither of the landowners claim damages."  On cross-examination, to the question:  "When you reached the lands of Mrs. Burr did you in talking to the viewers, C. A. McClung and J. H. McClung, and to G. A. Burr, Jacob Bays, R. C. Skaggs and possibly others, state to them that if the road went outside of your field through your lands you would not claim any damages on account of said road going through your land, or in substance that?" he replied:  "Not in them words.  They was George Burr brought up a conversation to this effect, says if any of us claims damage there won't be any road.  I replied and said that so far as I was concerned there was all the road I wanted, and if the road went through my place that I had filed an account for damages for $55; and George Burr says if you claim damage we will claim damage, and I told him I didn't care who claimed damage, that he could claim all the damage he pleased, and in the conversation I remarked something like this, that if I didn't have to build the line (lane) fence through my place that I wouldn't care so much, but if I had to make a lane fence plumb through my place there was going to be a big thing on me.  He contended that they had lanes through their place, that I had just as well built lanes as them, and I told him as well as I mind that they was done built, or something to that

effect, but I said in the talk that if it would go along the out-
side of my land that I would give the land along the outside
of my line, so I wouldn't have to build a lane fence." While, in
his answer, he uses the words "outside of my land," he evidently
intended, and by the purport thereof assuredly did intend to say
and mean, on his land along the outside line. The answer
taken as a whole, is susceptible of no other reasonable construc-
tion. He could not give, and presumably made no offer to give,
lands not owned or controlled by him.

His claim that he filed with defendant or its clerk a claim
for damages is without satisfactory proof in its support, and is
clearly refuted by proof deemed sufficient for that purpose. Be-
sides, not calling as a witness the attorney or agent by whom
the claim therefor was prepared or presented, according to his
testimony, justifies the presumption that, if produced, such wit-
ness would not only not support him in that respect but would
testify to the contrary. *Cooper* v. *Upton,* 60 W. Va. 619, 654,
and cases cited.

The testimony quoted, tending as it does, although appar-
ently evasive, to show plaintiff's consent to the establishment
of the road through his land, without damages or claim there-
for, accords with the positive statements of defendant's wit-
nesses that he did so agree. But he now asserts and insists
that the agreement is not legally conclusive against a subse-
quent right to withdraw therefrom and require payment for
such damage, and that, until such payment is made or the
road otherwise legally established by the county court, he may
obstruct it, and by injunction prevent the defendant from re-
moving the obstruction and reopening the highway to public
use. The authorities do not, under similar circumstances,
warrant any such pretensions. The rule announced by them is
to the contrary, as the following cases, those cited therein and .
in 16 Cyc. 768, clearly show. *Railway Co.* v. *Perdue,* 40 W.
Va. 443; *Railway Co.* v. *Railway Co.,* 70 W. Va. 227; *Mylius* v.
*Koontz,* 69 W. Va. 621; 1 Elliott on Roads and Streets, § 139,
146, 147; 2 *Id.,* § 733-737; 1 Lewis on Eminent Domain, §§
494, 495. As stated in *Railway Co.* v. *Railway Co.,* 70 W. Va.
227, the principle applicable to the facts of this case, and that
generally stated, is to the effect that if an owner of land, with
full knowledge and without protest, permits another, under a

bona fide claim of right or agreement therefor, to expend money in fitting it or any part thereof for public use, or for a use public in its nature and purposes, his remedy is limited to an action at law to recover compensation for the land so taken and used in the absence of an agreement not to claim such compensation, and he can not, by the injunctive process of the court, prevent the use of the land for the purpose so intended. Under such circumstances, the constitutional provision inhibiting the taking or damaging of private property for public use, without compensation paid or secured, has no application. The entry and improvement on the lands, under an agreement waiving the amount and not fixing any basis for compensation, or in case of dedication, or with the knowledge and acquiescence of the owner, operate as a waiver of the benefit of that provision. Its benefit is intended for those only who desire to retain title and possession thereunder until compensation is fixed and paid or secured as therein and otherwise provided, and not for those who otherwise agree. "If a landowner sees fit to permit an entry upon his lands by a railway company or an adjoining land owner, under some sort of an oral agreement, and large expenditures upon the faith of such agreement or permission, carrying an assurance of a conveyance of the title to the land or an easement therein, his situation is similar to that of a vendor by verbal contract, when the vendee has entered into possession and made substantial improvements." *Id.,* 231. Nor is the amount or character of the work material, if it is done on a public highway under the direction of the county court or its proper reprsentatives, and enures to the benefit of the general public. *Campbell* v. *Lewis,* 58 W. Va. 309.

But plaintiff denies both permission to enter and acquiescence on his part to an entry on his land or any part of it by defendant's agents for the purposes of preparing it for public use. But the evidence tends to prove, and does sufficiently prove, not only that he assisted in promoting the establishment of the road, and suggested changes in the location thereof on his lands, which were then made as so suggested, but also that he knew the road was in fact opened and used by the public whenever necessary or convenient, and that work thereon was continued from time to time under the order and direction of the proper officers and agents of the county court from the

spring of 1896 until obstructed by him in 1909, during which time it does not appear that he objected thereto. Although he says, and by proofs seeks to show, that he was absent from the county when the work began and that he first observed the work on his return home in February, 1906, he admits that he was present while the bridge across Laurel creek, on lands claimed by him and a part of the road so used, was in course of construction, in fact almost completed, and subsequently when it was being repaired, both construction and repairs being, as he also then knew, by and under the authority and direction of the defendant's road surveyor having charge of the precinct wherein the road is located. The evidence tends to show his presence near and within the unobstructed view of the road, while other and later repairs thereon through his lands were in process by defendant's agents acting under its authority, although he says he did not see the men engaged therein—a statement seemingly somewhat improbable.

Thus, it will be observed that from time to time from the spring of 1906 until 1909, without any notice or dissatisfaction on his part, or without any protest from him, the county court not only opened the road by the expenditure of the amount donated by other land owners affected and the additional county funds necessary for that purpose, but did work thereon, and that the public was using the same during that time in the manner and for the purposes for which it was intended. The question then presented for determination is whether, under these circumstances, and after this delay, plaintiff may restrain and prevent the county court from removing the obstructions placed on the road by the plaintiff. The following cases, with those already cited, answer that question in the negative. *Hast* v. *Railroad Co.,* 52 W. Va. 396; *Mann* v. *Peck,* 45 W. Va. 18. wherein it is said: "When a party, with full knowledge, or at least with sufficient notice or means of knowledge, of his right and of all material circumstances of the case, freely and advisedly does anything which amounts to the recognition of a transaction, or acts in a manner inconsistent with its repudiation, or freely and advisedly abstains for a considerable length of time from impeaching it, there is acquiescence, and the transaction, although originally impeachable, becomes unimpeach-

able in equity;" *Pence* v. *Bryant,* 54 W. Va. 263, which holds that when land has been dedicated for a public street, and accepted by long-use by the general public as a street, so that retraction would be hurtful to the public, the dedication can not be retracted, though no municipal order or action has accepted the dedication, and it is a valid street as between the dedicator and his alienees and the public; *Despard* v. *Despard,* 53 W. Va. 443, wherein it is held that "acquiescence in a transaction may bar a party of relief in a very short period. Where one has knowledge of an act, or it is done with his full approbation, he can not undo what has been done; and if he stands by and sees another dealing with property in a manner inconsistent with his right, and makes no objection, he can not afterwards have relief. Where his silence permitted or encouraged others to part with their money or property, he can not complain that his interests are affected. His silence is acquiescence, and estops him." 1 Elliott on Roads and Streets, § 124, says: "The public, as well as individuals, have a right to rely on the conduct of the owner as indicative of his intent. If the acts are such as would fairly and reasonably lead an ordinarily prudent man to infer an intent to dedicate, and they are received and acted upon by the public, the owner can not, after acceptance by the public, recall the appropriation. Regard is to be had to the character and effect of the open and known acts, and not to any latent and hidden purpose. If the open and known acts are of such a character as to induce the belief that the owner intended to dedicate the way to public use, and the public and individuals act upon such conduct, proceed as if in fact there had been a dedication, and acquire rights which would be lost if the owner were allowed to reclaim the land, then the law will not permit him to assert that there was no intent to dedicate, no matter what may have been his secret intent."

The conclusion is to reverse the decree of October 25, 1909, dissolve the injunction awarded June 18, 1909, and dismiss the bill, with costs and damages as required by law.

*Reversed.   Injunction Dissolved.   Bill Dismissed.*