490 S.E.2d 800

**Henry O'DANIELS, Jr., Petitioner Below, Appellee,**

v.

**CITY OF CHARLESTON, a Municipal Corporation, Respondent Below, Appellant.**

**No. 23735.**

Supreme Court of Appeals of West Virginia.

Submitted April 29, 1997.

Decided July 15, 1997.

G. Nicholas Casey, Jr., Chad B. McIntosh, Lewis, Friedberg, Glasser, Casey & Rollins, Charleston, for Appellee.

Robert A. Goldberg, James P. McHugh, King, Allen & Guthrie, Charleston, for Appellant.

STARCHER, Justice:

This action is an appeal of a circuit court order granting a writ of mandamus compelling the respondent City of Charleston ("City") to remove fences which the petitioner below alleges blocks travel on a City street. Because the petitioner below failed to join the owner of the fences at issue, and because the circuit court's order fails to define with specificity the boundaries of the City street, we reverse the circuit court's order and remand the case for further proceedings.

I.

*Facts and Background*

This dispute involves a dead-end City street known as Ledge Hill Drive. The record indicates that Ledge Hill Drive is a narrow road carved across a curving hillside approximately 275 feet in length, and 20 feet wide. The road dead-ends at an L-shaped turn-around area. Ledge Hill Drive appears to have been created at some point in the 1950's when the then-landowner subdivided his property into several plots.

The petitioner below, appellee Henry O'Daniels, Jr., owns a home situated at the end of Ledge Hill Drive on the downhill side. Mr. O'Daniels has owned the property since 1960. The record suggests that the only access to Mr. O'Daniels' property is through the use of the Ledge Hill Drive L-shaped turn-around which adjoins the O'Daniels' property.

On the uphill side of Ledge Hill Drive is property owned by individuals who are not parties to this action, David R. and Patricia M. Lytle ("Lytles"). The Lytles' property is adjacent and parallel to Ledge Hill Drive and stretches from the beginning of the road to the dead-end turn-around area. The Lytles own a two-car garage that abuts the end of the L-shaped turn-around area. The Lytles' deed indicates that they own the base of the L-shaped area and testimony suggests they use the area as a driveway to their garage, despite the fact that others (including Mr. O'Daniels) also use an undetermined portion of the L-shaped area as part of Ledge Hill Drive.

Since the creation of the subdivision in the 1950's, the City of Charleston has paved the street at least three times, and in so doing paved part, if not all, of the turn-around area, including the base of the L-shaped turn-around, and may have paved up to the edge of the Lytles' garage. The Lytles have also maintained the turn-around area by performing maintenance of the area. Furthermore, the City has plowed snow from the road and from the turn-around. City garbage trucks, mail carriers, delivery vehicles, and other vehicles have also used some portion of the turn-around.

The City has made other repairs to the edges of Ledge Hill Drive to improve drainage. At some point, the City installed a gravel-filled storm sewer catch basin halfway down the road on the uphill side. This catch basin was constructed next to the road, and partially within the Lytles' property line as described in the deed to the property. The parties agree that the catch basin area has been used by the public for parking, or as a means of moving off of the road to allow vehicles to pass, for more than ten years.

In late 1993 and early 1994, the Lytles installed two fences that are at the heart of this action. First, the Lytles constructed a chain-link fence between the two doors of their garage, and extended the fence perpendicular to Ledge Hill Drive and the garage, halfway into the base of the L-shaped turn-around. The Lytles then placed a steel fence post on the edge of their property line (and the edge of Ledge Hill Drive, as indicated in their deed), and stretched a removable chain from the end of the chain-link fence to the steel fence post, again, stretching perpendicular to Ledge Hill Drive.[1] This chain and chain-link fence combination splits the turn-around area in half, but allows the Lytles

---

1. The record is unclear, but it appears that the Lytles may have also installed additional steel posts along their property line on the outer corners of the turnaround area. This would allow the Lytles to stretch another chain parallel to Ledge Hill Drive across the turnaround area, thereby blocking their access to their garage while also totally denying the public any use of the area.

access to both doors of their garage. However, it inhibits large vehicles from using the area as a turn-around. For example, Mr. O'Daniels alleges that vehicles making deliveries to his house must now back the 275 feet to the main road.

The second fence consists of a split-rail fence constructed by the Lytles along the length of their property line adjacent and parallel to Ledge Hill Drive. The split-rail fence stretches from the inner edge of the turn-around zone to the end of Ledge Hill Drive. The split-rail fence cuts across the City catch basin, thereby segregating the basin from the road. Mr. O'Daniels contends that the fence now prohibits the public from using the basin area for parking or as a pull-off area to let vehicles pass.

A 1960 subdivision plat contained in the record indicates that Ledge Hill Drive consists of a 20–foot right-of-way with ten feet of asphalt pavement, and does not include the turn-around zone. However, Mr. O'Daniels alleges that the turn-around area and the catch basin are, by operation of law, part of the Ledge Hill Drive right-of-way. *W.Va. Code,* 17–1–3 [1989] defines the term "road" and states that:

> Any road shall be conclusively presumed to have been established when it has been used by the public for a period of ten years or more, and public moneys or labor have been expended thereon, whether there be any record of its conveyance, dedication or appropriation to public use or not.

On the basis of this statute, Mr. O'Daniels alleged that because the City had been maintaining some portion of the turn-around zone and the catch basin for upwards of 30 years, and the public had also been using these areas for travel and parking, then the turn-around zone and catch basin were part of Ledge Hill Drive.

Accordingly, after the Lytles installed the two fences, Mr. O'Daniels made complaints to the City engineer alleging the fences ob-

structed the public's use of Ledge Hill Drive. Upon examination, a City engineer concluded that the fences were located on private property owned by the Lytles and refused to have the fences removed.

Thereafter, appellee O'Daniels filed a petition for a writ of mandamus solely against the appellant City of Charleston alleging that the City had a mandatory and nondiscretionary duty to prevent the obstruction of public rights-of-way such as Ledge Hill Drive.[2] Mr. O'Daniels petitioned the circuit court to order the City to remove obstructions from Ledge Hill Drive, namely, the fences erected by the Lytles. The Lytles were not named as parties.

After taking evidence, on February 6, 1996 the circuit court issued an order granting the appellee a writ of mandamus. The circuit court found that "Ledge Hill Drive includes the turn-around" and that "Ledge Hill Drive includes the catch basin/ditch." Additionally, the court concluded that "David Lytle is estopped from claiming the turn-around and catch basin/drain" because he failed to object to the City's use and improvement of the property. The circuit court also made findings that the City has a nondiscretionary duty to remove obstructions from public highways.

After finding the two areas constituted part of the City street, the circuit court held that the City had a nondiscretionary duty to remove, without liability, any obstructions to Ledge Hill Drive. The circuit court therefore held that:

> The Respondent, the City of Charleston, West Virginia, is to take action to remove any existing obstructions and in the future prevent anyone from obstructing the free public use of said street. Specifically, the Respondent shall ensure that the posts and chains obstructing the turn-around are removed and the split rail fence is removed and/or set back from the catch basin/drain and drainage ditch area. This being the

---

**2.** *W.Va.Code,* 17–16–1 [1925] empowers county commissions and the commissioner of highways (but not cities) to apply to a circuit court to remove obstructions to roads which interfere with travel. Obstructions include "fences, buildings or other obstructions within the bounds of a

public road[.]" The *Charleston City Code* similarly prohibits individuals from constructing, placing or leaving "in or upon any street, sidewalk, public grass strip or other public place any obstruction to travel." *Charleston City Code,* § 28–4.

graded area that has been graveled and maintained by the Respondent and used by the public.

Furthermore, the circuit court held that the appellee was entitled to his attorney fees and other legal costs since he had on several occasions asked the City to prevent the obstruction of Ledge Hill Drive, and the City had failed to exercise its allegedly nondiscretionary duty to do so.

The City now appeals the circuit court's ruling.

## II.

### Standard of Review

The standard of appellate review of a circuit court's order granting relief through the extraordinary writ of mandamus is *de novo.* Syllabus Point 1, *Staten v. Dean,* 195 W.Va. 57, 464 S.E.2d 576 (1995). We review a circuit court's underlying factual findings under a clearly erroneous standard. 195 W.Va. at 62, 464 S.E.2d at 581. We also review conclusions of law under a clearly erroneous standard.

## III.

### Discussion

The City of Charleston appeals alleging that the circuit court erred in issuing a writ

3. The City also alleges the circuit court: (1) Erred in granting the writ because questions of law and fact existed with respect to the dimensions and boundaries of Ledge Hill Drive; (2) Should not have granted the writ of mandamus because other adequate remedies are available to the petitioner; (3) Should not have found that the Lytles' driveway became part of the public right-of-way by operation of law and that. the Lytles' split-rail fence obstructed .use of Ledge Hill Drive; and (4) Improperly granted attorneys' fees without making the requisite findings pursuant to *State ex rel. West Virginia Highlands Conservancy v. West Virginia Div. of Environmental Protection,* 193 W.Va. 650, 458 S.E.2d 88 (1995). We decline to address these issues, leaving them to the discretion of the circuit court to address on remand.

4. The appellee argues that the Lytles cannot object to the City's taking of their property, because the Lytles never objected in the past and therefore, the taking has occurred by operation of law. The appellee's argument is based upon *Champ v. Nicholas County Court,* 72 W.Va. 475, 78 S.E. 361 (1913), where we stated in Syllabus Point 1 that:

of mandamus involving real property in the absence of the property owners whose property rights were directly affected and erred in failing to provide a detailed description of the dimensions and boundaries of Ledge Hill Drive which are affected by the writ of mandamus.[3] We agree and reverse the circuit court's decision.

### A.

### *Failure to Join the Lytles in the Litigation*

Mr. O'Daniels argues that his action is focused entirely on the City's duties, that is, whether or not the City has a duty to clear Ledge Hill Drive of obstructions. Because the right-of-way belongs to the City and it is the duty of the City to maintain it (including clearing obstructions), the appellee argues that the fact the right-of-way extends onto the real property of another person does not extinguish that duty.[4] Conversely, the City argues that with his petition for a writ of mandamus, Mr. O'Daniels has essentially forced the City to appropriate property belonging to the Lytles. Accordingly, the City argues that the Lytles should be a party to this action to defend their interests.[5] We agree with the City's position.

> Where a landowner, with full knowledge and without protest, permits a county court, under bona fide claim of right or an agreement evincing intent to dedicate a way for a public highway, to expend money and labor in fitting it for such use, he cannot, after establishment, maintenance, and public use thereof continuously for three years, prevent by injunction further use of the land for the purpose so intended.

While we continue to stand by this proposition, we do not believe it is applicable to this case. We agree that the Lytles cannot object to the City's use of land which is clearly within the City's domain; the sticking point in this case is that the Lytles were never given an opportunity to participate in the action and dispute what part of their property, if any, was taken from them by the City by operation of law.

5. The City filed several motions to dismiss Mr. O'Daniels' petition on the ground that he had failed to join a necessary party in the action. We agree with the circuit court that dismissal would have been a harsh remedy. A more efficient alternative may have been for the City to initiate a third-party action against the Lytles once the motion to dismiss was denied.

It is axiomatic that when a court proceeding directly affects an interest in real property, any persons who claim an interest in the real property at issue are necessary parties to the proceeding. Therefore, any decree issued in the absence of those parties is void.

This Court demonstrated the principle in *Bonafede v. Grafton Feed & Storage Co.*, 81 W.Va. 313, 94 S.E. 471 (1917), an action to quiet title. In that case a property owner initiated a lawsuit against several other individuals to remove a cloud upon his title to a 5½ foot strip of land. We reversed the circuit court's dismissal of one of these other individuals stating that in an action to quiet title, "all parties who have or claim any interest, right or title under the instrument, or instruments, of writing sought to be canceled, should be made parties defendant." Syllabus Point 1, *supra*.

A similar situation arose in *United Fuel Gas Co. v. Morley Oil & Gas Co.*, 101 W.Va. 73, 131 S.E. 713 (1926), where we addressed an injunction to prohibit the removal of oil and gas from land owned by the Roane County Board of Education. The plaintiff owned the land surrounding the disputed lot, and claimed that the disputed lot contained a restrictive covenant that limited the use of the land to educational purposes. The county school board gave the defendant a lease to place oil and gas wells on the school property. The circuit court initially granted a temporary injunction, but then dissolved the injunction on the defendant's motion because the school board had not been sued.

We reversed the circuit court's decision, ruling in Syllabus Point 1 that a temporary injunction should not be dissolved for lack of a necessary party until the plaintiff has been given an opportunity to amend its complaint, or has refused to do so. We concluded that it was "apparent that the board of education [was] vitally interested" in the outcome of the dispute because its lease was under attack on the ground it had no right to extract the oil and gas. *United Fuel Gas Co.*, 101 W.Va. at 77, 131 S.E. at 715. Because the board of education was a necessary party to the action, the circuit court's decision was reversed, the injunction was reinstated, and the case

was remanded to allow the plaintiff to amend its complaint.

The requirement that all interested persons be joined in an action to resolve property rights was also considered in *Oneal v. Stimson*, 61 W.Va. 551, 56 S.E. 889 (1907). In *Oneal* we addressed the partition of land owned by numerous individuals, many of whom were infants. Several owners seeking partition failed to name the infant children, yet were granted a decree partitioning the land. Once the partition was complete, those owners sold their interest to third parties.

The infant children later filed a lawsuit against the third-party purchasers of the land to set aside the partition. We held that because the infants were not made parties to the partition suit, their rights to the property could not be adjudicated. Syllabus Point 3, *Oneal, supra*. We concluded in Syllabus Point 4 that "A decree of partition rendered in a suit in which all the persons in interest were not parties is null and void."

█ We therefore conclude that when a court proceeding directly affects or determines the scope of rights or interests in real property, any persons who claim an interest in the real property at issue are indispensable parties to the proceeding. Any order or decree issued in the absence of those parties is null and void.

█ The action filed by Mr. O'Daniels seeks to force the City to remove fences constructed by the Lytles which may or may not be on the Lytles' property. The facts as they are presented to this Court indicate that the boundaries of Ledge Hill Drive, particularly those parts belonging to the City by operation of *W.Va.Code*, 17–1–3, are not clearly established. Hence, to have any effect, the Lytles should have been joined in this action and given an opportunity to defend their interests in their property. Because of the Lytles' absence, we reverse the circuit court's decision and remand the cause to allow the appellee to join the Lytles as respondents.

### B.

### *Specificity of the Circuit Court's Order*

The City challenges the circuit court's writ of mandamus alleging that it "fails to provide

guidance on the precise description of the property, not previously a part of Ledge Hill Drive, as shown in the Subdivision Plat and described in the deeds of the respective parties, which is subject to appropriation by virtue of this proceeding and the circuit court's order."

■ We have previously stated that a prescriptive easement of a private way over land must have a particular and definite line. Syllabus Point 1, *Crosier v. Brown*, 66 W.Va. 273, 66 S.E. 326 (1909). When a circuit court issues an order establishing an easement that is defective as to the description or location of the right-of-way, this Court will remand the case to more definitely locate the right-of-way and correct this technical defect. Syllabus Point 4, *Post v. Wallace*, 119 W.Va. 132, 192 S.E. 112 (1937).

■ We believe that similar reasoning applies in cases where land is taken by operation of law under *W.Va.Code*, 17–1–3 [1989]. Accordingly, we hold that any order or decree establishing a public highway under *W.Va.Code*, 17–1–3 must define the right-of-way over land with a particular and definite line.[6]

The circuit court's only findings on the boundaries of the road are that "Ledge Hill Drive includes the turn-around" and that "Ledge Hill Drive includes the catch basin/ditch." Because the circuit court's order fails to define the boundaries of Ledge Hill Drive now under the control of the City, it cannot be effectively enforced in the future. Potential third-party purchasers of land bordering Ledge Hill Drive will be unable to determine where the City right-of-way ends and their land begins, and they would receive no guidance from reading the circuit court's order. Accordingly, we reverse the circuit court's order and remand the action to allow the court to define the bounds of the City's right-of-way with specificity and a "definite and particular line."

## IV

### Conclusion

The circuit court's February 6, 1996 order is reversed and the case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

McHUGH, J., deeming himself disqualified, did not participate in the decision.

---

6. The circuit court has considerable leeway in determining the boundaries of a public highway. The 1960 subdivision plat indicates that Ledge Hill Drive consists of a 20–foot right-of-way, with ten feet of pavement. *W.Va.Code*, 17–1–3 [1989] states, in part, that:

> In the absence of any other mark or record, the center of the traveled way shall be taken as the center of the road and the right-of-way shall be designated therefrom an equal distance on each side, but a road may be constructed on any part of the located right-of-way when it is deemed advisable so to do.

In *Burns v. Goff*, 164 W.Va. 301, 262 S.E.2d 772 (1980) (*per curiam*), we approved the circuit court's use of a metes and bounds description to establish an easement.